IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.C. JEFFERSON, on behalf of himself and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHASE HOME FINANCE LLC,<br><br>Defendant. | NO. C06-6510 TEH<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS |

This matter came before the Court on Monday, April 30, 2007, on Defendant Chase Home Finance LLC's ("Chase's") motion for judgment on the pleadings. After carefully reviewing the parties' written and oral arguments, the complaint, and relevant law, the Court now GRANTS IN PART and DENIES IN PART the motion for the reasons set forth below.

**BACKGROUND**

Plaintiff T.C. Jefferson brought this lawsuit on behalf of himself and the following putative class: "All persons residing in the State of California who have made prepayments on notes to CHASE that CHASE failed to promptly apply to accounts within the time period of August 24, 2002 through the date of resolution of this action." Compl. ¶ 11. Jefferson is scheduled to file his class certification motion by June 11, 2007, with the motion hearing to be noticed for September 10, 2007.

The allegations in this case relate to mortgage loans issued by Chase and loans now managed by Chase after Chase purchased notes held by other companies. Borrowers, including Jefferson, are required to make monthly payments under these mortgages and are also allegedly able to make additional payments against their principal balances without penalty.

1  However, Jefferson alleges that he made mid-monthly prepayments on his mortgage
2  that were not promptly applied to his account. Instead, Chase allegedly "placed
3  PLAINTIFF's mid-monthly prepayments into a 'suspense account' until *after* CHASE
4  calculates the interest due on the note for the following month." *Id.* ¶ 1. Jefferson further
5  alleges that the use of such "suspense accounts" was a regular practice, resulting in:

> (a) consumers continuing to accrue interest on principal amounts that were artificially high due to DEFENDANTS' failure to apply payments against the principal in a prompt manner, (b) the loss of interest consumers would have enjoyed on the amounts had such amounts remained in their possession, and (c) the payment of interest or investment returns to Chase while Chase wrongfully held these amounts in "suspension accounts."

*Id.* ¶ 9. Based on these allegations, Jefferson asserts four causes of action on behalf of the putative class: (1) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (2) deceptive advertising practices, Cal. Bus. & Prof. Code § 17500; (3) violation of California Business and Professions Code sections 17200 *et seq.*; and (4) conversion.

Chase now moves for judgment on the pleadings on Jefferson's first and fourth causes of action. Chase contends that the CLRA does not apply to mortgages and that Jefferson's conversion claim cannot lie because Jefferson fails to allege that Chase converted specific, identifiable property. The Court addresses each claim in turn below.

**LEGAL STANDARD**

Granting a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is proper when "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir. 1989). In analyzing a Rule 12(c) motion, the court must assume the pleading's factual allegations to be true and must construe all reasonable inferences in favor of the nonmoving party. *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

2

**DISCUSSION**

**I. First Cause of Action for Violation of the CLRA**

Chase first moves for judgment on the pleadings on Jefferson's first cause of action for violation of the CLRA. Of relevance to this case, the CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Jefferson contends that Chase engaged in four such prohibited practices: misrepresenting the sponsorship or approval of services, *id.* § 1770(a)(2); representing that services had characteristics, uses, and benefits which they did not have, *id.* § 1770(a)(5); advertising services "with intent not to sell them as advertised," *id.* § 1770(a)(9); and "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve," *id.* § 1770(a)(14).

Chase argues that the CLRA does not apply to this case because the prerequisite "transaction intended to result or which results in the sale or lease of goods or services to any consumer," *id.* § 1770(a), does not exist. For support, Chase relies on *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006). As an intermediate appellate court decision, *McKell* is "persuasive" authority, but it is not binding if this Court concludes that the California Supreme Court would rule otherwise; federal courts must apply "California law as we believe the California Supreme Court would apply it." *In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 924 (9th Cir. 2000).

In *McKell*, the plaintiffs alleged that the defendants overcharged them for "underwriting, tax services, and wire transfer fees in conjunction with home loans. Defendants [allegedly] charged plaintiffs more for these services than defendants paid the [third-party] service providers." 142 Cal. App. 4th at 1465. The appellate court sustained the trial court's demurrer of the plaintiffs' CLRA claims, concluding that the defendants' "actions were undertaken in transactions resulting in the sale of real property," as opposed to "the sale or lease of goods or services," and that the CLRA therefore did not apply. *Id.* at 1488.

3

For the reasons discussed below, this Court does not find *McKell* to be persuasive, nor does the Court conclude that the California Supreme Court would reach the same result as *McKell* on the facts of this case. First, as Jefferson correctly observes, the court in *McKell* provided no analysis before reaching its conclusion that the CLRA did not apply; the court simply stated that, "Plaintiffs cite no authority or make no argument demonstrating that Washington Mutual's actions were undertaken 'in a transaction intended to result or which results in the sale or lease of *goods* or *services*.'" *Id.* (citing Cal. Civ. Code § 1770(a)). Here, by contrast, Jefferson argues that Chase made misrepresentations in connection with the sale of financial services. For instance, Jefferson specifically alleges that "DEFENDANTS' mortgage notes and other documents relating to these mortgages specifically include provisions allowing California consumers to make . . . prepayments without penalty, and/or provisions that such payments will be applied to the account principal or unpaid interest." Compl. ¶ 8.

Moreover, the CLRA defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b). Chase cited this definition in its papers, but it provided no written argument as to why the financial services allegedly offered by Chase would not fall under this description. At oral argument, Chase appeared to contend that the phrase "including services furnished in connection with the sale or repair of goods" served to limit the CLRA to such services. However, this argument fails on its face, as "including" indicates exactly that – inclusiveness – rather than an exhaustive list. Chase further argued at the hearing that the CLRA should not apply to real estate lending because that market is already heavily regulated, but Chase pointed to nothing in the CLRA that specifically excludes real estate lending.[1] Because the CLRA must be "liberally construed," Cal. Civ.

---

[1] Although not cited by either party, California Civil Code section 1754 provides that the CLRA "shall not apply to any transaction which provides for the construction, sale, or construction and sale of an entire residence or . . . for the sale of a lot or parcel of real property, including any site preparation incidental to such sale." However, this provision bars application of the CLRA only to transactions for the sale or construction of real property; it does not also exclude financial services related to such transactions.

4

1  Code § 1760, this Court cannot conclude that the California Supreme Court would expand
2  the CLRA's specified exclusions or read into the CLRA exclusions that are not present on
3  the face of the statute.

4      In fact, the California Supreme Court and a district court in the Central District of
5  California (in a case not cited by either party) have applied the CLRA to allegations
6  involving financial services. *Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal. 3d 582, 596-97
7  (1984) (applying the CLRA to claims regarding management fees in connection with
8  individual retirement accounts); *Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F.
9  Supp. 2d 1095, 1109 (C.D. Cal. 2006) (denying motion to dismiss CLRA claims based on
10 "estate and financial planning" services). In a related context, an intermediate California
11 appellate court concluded that credit card agreements encompass convenience services in
12 addition to an extension of credit and that, therefore, such agreements qualify as contracts for
13 "services" under a non-CLRA statute. *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274,
14 286-88 (1995). Chase did cite to one recent case where an intermediate California appellate
15 court concluded that issuance of a credit card does not constitute a "service" under the
16 CLRA, but this Court does not find that case persuasive here because (a) the state court relied
17 heavily on the legislature's consideration and rejection of including "credit" as part of the
18 CLRA's definitions and (b) the court failed to consider whether, as the *Hitz* court concluded,
19 a credit card agreement involves other services in addition to simply an extension of credit.
20 *Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 229-33 (2007). Similar to the
21 court in *Hitz*, this Court concludes that the transactions between Chase and Jefferson involve
22 more than the provision of a loan; they also include financial services.

23     In light of all of the above, the Court cannot say with any confidence that the
24 California Supreme Court would reach the same result as the *McKell* court on the facts of
25 this case. Particularly in light of the Supreme Court's application of the CLRA to financial
26 services agreements in *Kagan*, Chase has failed to persuade this Court that financial services
27 related to real estate transactions are excepted from the CLRA's scope. Consequently, Chase
28 has failed to meet its burden of establishing that it is entitled to judgment as a matter of law,

5

1 and this Court therefore DENIES Chase's motion for judgment on the pleadings on
2 Jefferson's CLRA claim.

## II. Fourth Cause of Action for Conversion

Chase also moves for judgment on the pleadings on Jefferson's fourth cause of action for conversion. The elements of a conversion claim are: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998). The parties agree that "money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved." *Haigler v. Donnelly*, 18 Cal 2d. 674 (1941). However, this does not mean that "each coin or bill [must] be earmarked" before a conversion claim may lie. *Id.*

Chase again relies on *McKell*, where the court explained that, "Plaintiffs cite no authority for the proposition that a cause of action for conversion may be based on an overcharge. Consequently, they have failed to demonstrate that they have stated a cause of action for conversion." 142 Cal. App. 4th at 1492. Contrary to Chase's assertions, however, Jefferson in this case does not base his conversion claim on an overcharge of interest. While overcharging interest is one of the alleged *results* of Chase's actions in this case, the conversion claim stems from the alleged act of failing to apply prepayments against the principal due on Jefferson's loans, not from the alleged resultant overcharge in interest. Thus, *McKell* is distinguishable on its facts.

Similarly, a second case cited by Chase is also factually distinguishable. In *Vu v. California Commerce Club, Inc.*, the court held that the plaintiffs failed to state a claim for conversion because they did not "identify any specific identifiable sums that the [defendant card] club took from them. . . . Indeed, the gist of plaintiffs' case was that much of the money they lost was taken by persons other than the club or its employees." 58 Cal. App. 4th 229, 235 (1997). Here, by contrast, Jefferson specifically alleges that Chase converted the mid-monthly prepayments he made on his mortgage account, and Chase cites no

6

1 authority for the proposition that any further level of specificity is required at this stage of the
2 proceedings.

3 Chase's attempt to distinguish this case from *Chazen v. Centennial Bank*, 61 Cal. App.
4 4th 532 (1998), is therefore also unpersuasive. In that case, the court held that the plaintiffs
5 stated a claim for conversion against a bank where the bank allegedly used funds from
6 accounts held in trust for plaintiffs to pay bank fees owed by the trustee. Chase argues that
7 *Chazen* can be distinguished because "the conversion at issue there involved three
8 specifically identified fiduciary accounts against which the bank had wrongfully executed the
9 right of set off." Reply at 3. Like the plaintiff in *Chazen*, however, Jefferson also
10 specifically identifies the account at issue, albeit not by number, by alleging that Chase
11 unlawfully converted the funds he paid to his specific mortgage account with Chase. Thus,
12 the Court finds no basis for accepting Chase's argument that Jefferson's conversion claim
13 fails to identify the funds in question with the requisite specificity.[2]

14 However, although Chase did not raise this issue in its motion papers, the Court
15 questioned the parties at oral argument regarding whether Jefferson satisfies the first element
16 of conversion – namely, that he owns or has the right to possess the money in question. On
17 this point, Chase has the stronger argument. The cases relied on by Jefferson involve money
18 being held on a plaintiff's behalf by another party as an agent or trustee. For example, the
19 money in *Chazen* was being held in trust for the plaintiffs by the defendant banks. Similarly,
20 in *Fischer v. Machado*, 50 Cal. App. 4th 1069, 1073-74 (1996), the money had been accepted
21 by the defendant as an agent for the plaintiff, and the defendant-agent allegedly used the
22 funds for its own benefit rather than paying the money to the plaintiff-principal. Likewise, in
23 *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975), the plaintiff stated a claim for conversion
24 where he had an attorney's lien on funds paid to the defendants. Unlike in those cases,
25 Jefferson fails to allege that he had any ownership rights to the funds at issue once he

---

[2] Additionally, Chase is incorrect that this case is distinguishable from *Chazen* because "Chase is not alleged to have *stolen* Plaintiff's funds." *Id.* Contrary to Chase's contention, Jefferson does essentially allege that Chase "stole" his funds by failing to apply them to the principal balance on Jefferson's mortgage loan.

7

transmitted those funds to Chase as payments on his mortgage, nor does Jefferson allege that an agency or trust relationship existed between Chase and Jefferson. It does not appear, for instance, that Jefferson could at any point have demanded that Chase return his prepayments to him in the way that the plaintiffs in the above cases could have asserted their ownership rights to the questioned funds. While it seems unlikely that Jefferson will be able to cure this deficiency by an amended pleading, the Court cannot say that it would be impossible for him to do so. Accordingly, the Court GRANTS Jefferson's motion for judgment on the pleadings without prejudice.

**CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Chase's motion for judgment on the pleadings. The motion is DENIED as to Jefferson's CLRA claim but GRANTED without prejudice as to Jefferson's conversion claim. If Jefferson wishes to file an amended complaint to attempt to cure the deficiencies of his conversion claim, he must do so on or before **May 24, 2007.** Failure to file a timely amended complaint shall result in dismissal of Jefferson's conversion claim with prejudice.

**IT IS SO ORDERED.**

Dated:   05/03/07

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT