1  G. SCOTT EMBLIDGE, State Bar No. 121613
   ROBERT D. SANFORD, State Bar No. 129790
2  SYLVIA SOKOL, State Bar No. 200126
   MOSCONE, EMBLIDGE, & QUADRA, LLP
3  220 Montgomery Street, Suite 2100
   San Francisco, California 94104
4  Telephone:    (415) 362-3599
   Facsimile:    (415) 362-7332
5

6  JAMES C. STURDEVANT, State Bar No. 94551
   MARK T. JOHNSON, State Bar No. 76904
7  THE STURDEVANT LAW FIRM
   A Professional Corporation
8  475 Sansome Street, Suite 1750
   San Francisco, California  94111
9  Telephone:    (415) 477-2410
   Facsimile:    (415) 477-2420
10

11 Attorneys for Plaintiff
   T.C. JEFFERSON on behalf of himself and
12 all those similarly situated

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16

17 T.C. JEFFERSON, on behalf of himself and      Case No.:  C06-6510 TEH (BZ)
   all those similarly situated,
18                                               **CLASS ACTION**
                     Plaintiffs,
19                                               **PLAINTIFF'S MEMORANDUM OF
                     v.                          POINTS AND AUTHORITIES IN
20                                               OPPOSITION TO CHASE HOME
   CHASE HOME FINANCE and                        FINANCE, LLC'S MOTION FOR
21 DOES 1-150,                                   SUMMARY JUDGMENT**

22                   Defendants.
                                                 **Hon. Thelton E. Henderson**
23

24                                               **Date:        October 22, 2007
                                                 Time:        10:00 a.m.
25                                               Courtroom:  12, 19th Floor**

26

27

28

---

MPA IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                    C06-6510 TEH (BZ)

## TABLE OF CONTENTS

INTRODUCTION .............................................................................................................1

STATEMENT OF FACTS ..............................................................................................2

ARGUMENT ....................................................................................................................5

I.      AS THE MOVING PARTY ON A MOTION FOR SUMMARY
JUDGMENT, CHASE HAS THE BURDEN OF PRODUCTION
AND THE ULTIMATE BURDEN OF PERSUADING THE COURT
THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTS AND
THAT IT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.............................5

II.      NEITHER THE NATIONAL BANK ACT NOR REGULATIONS
ADOPTED BY THE OFFICE OF THE COMPTROLLER OF THE
CURRENCY PREEMPT THE CONSUMER PROTECTION CLAIMS
ASSERTED BY PLAINTIFF ...........................................................................................7

     A.      There is a Presumption Against Federal Preemption of State
Law, Which Defendant Has the Burden of Overcoming.........................................8

     B.      Express Preemption Does Not Apply to Plaintiff's Claims
Because the National Bank Act Contains No Language
Indicating that Congress Intended that the Act Supplant
Applicable State Laws ............................................................................................9

     C.      Field Preemption Does Not Apply to Plaintiff's Claims
Because Neither the Structure Nor the Purpose of the National
Bank Act Indicates That Congress Intended to Occupy the
Entire Field of Banking or Real Estate Lending...................................................10

     D.      Conflict Preemption Does Not Bar Plaintiff's Claims Because
the Application of the State Laws on Which Plaintiff Bases his Claims
Does Not Obstruct or Significantly Impair the Exercise of any Powers
Authorized by the National Bank Act..................................................................11

         1.      Plaintiff's Claims Are Not Preempted Because They Do
Not Obstruct or Significantly Impair Chase's Ability to
Engage in Real Estate Lending or the Processing of
Mortgage Loan Payments .............................................................12

         2.      Chase Has Made No Showing That Its Actions as a Loan
Servicing Company, Rather than a Real Estate Lender, Involve
the Exercise of Any Power Granted to National Banks
by Congress.................................................................................18

III.      EACH OF PLAINTIFF'S CLAIMS ARE MERITORIOUS AND NOT
SUCCEPTIBLE TO SUMMARY JUDGMENT BASED UPON THE
ARGUMENTS MADE BY CHASE ...............................................................................20

         a.      Plaintiff's Consumer Legal Remedies Act Claim is Based
Upon Direct Misrepresentations Made by Chase
Which Resulted in the Monetary Loss to Plaintiff....................................20

i

b.   The Claim Under the False Advertising Act Is
Based Upon the False Statements Made by Chase to
Plaintiff and Other Borrowers About the Manner in
Which Prepayments Will be Applied .........................................................22

c.   Plaintiff's UCL Claim is Not Based Upon General
Principles of Fairness, but Upon Chase's Fraudulent
Statements, Its Violation of the CLRA and FAA, and
Its Systematic Breach of the Mortgage Loan Contracts
it Services................................................................................................23

d.   The Evidence Supports Plaintiff's Claim for Conversion ..........................24

CONCLUSION.................................................................................................................25

MPA IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT          C06-6510 THE (BZ)

# TABLE OF AUTHORITIES

## CASES

*Allied Grape Growers v. Bronco Wine Co.,*
    203 Cal. App. 3d 432 (1988) ................................................................24

*America Online, Inc. v. Superior Court,*
    90 Cal. App. 4th 1 (2001) ...................................................................21

*Bank of America v. City & County of San Francisco,*
    309 F.3d 551 (9th Cir. 2002) ............................................8, 11, 16, 17

*Barnett Bank of Marion County, N.A. v. Nelson,*
    517 U.S. 25 (1996).............................................................11, 12, 18

*Barquis v. Merchants Collection Association,*
    7 Cal. 3d 94 (1972) ..............................................................................16

*Bates v. Dow Agrosciences LLC,*
    544 U.S. 431 (2005)..............................................................................8

*Broughton v. Signa Health Plans of Cal.,*
    21 Cal. 4th 1066 (1999) ......................................................................21

*California v. ARC America Corp.,*
    490 U.S. 93 (1989).............................................................................8, 9

*Cel-Tech Communication, Inc. v. Los Angeles Cellular Telegraph Co.,*
    20 Cal. 4th 163 (1999) ..................................................................16, 24

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)...............................................................................5

*Chern v. Bank of America,*
    15 Cal. 3d 866 (1976) ..........................................................................22

*Committee on Children's Television, Inc. v. General Foods Corp.,*
    35 Cal. 3d 197 (1983) ....................................................................22, 24

*Consumer Advocates v. Echostar Satellite Corp.,*
    113 Cal. App. 4th 1351 (2003) ...........................................................22

*Eisenberg v. Insurance Co. of North America,*
    815 F.2d 1285 (9th Cir. 1987) ..............................................................5

*Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.,*
    403 F. Supp. 2d 968 (N.D. Cal. 2005) ...........................................14, 24

*Farmers Insurance Exchange v. Superior Court,*
    2 Cal. 4th 377 (1992) ..........................................................................24

*Feather River Trailer Sales, Inc. v. Sillas,*
    96 Cal. App. 3d 234 (1979) .................................................................23

iii

*Fenning v. Glenfed, Inc.*,
      40 Cal. App. 4th 1285 (1995) .................................................................................15

*First National Bank of San Jose v. State of Califoria*,
      262 U.S. 366 (1923).............................................................................................18

*Florida East Coast Railway Co. v. City of West Palm Beach*,
      266 F.3d 1324 (11th Cir. 2001) .............................................................................9

*Florida Lime & Avocado Growers v. Paul*,
      373 U.S. 132 (1963)...............................................................................................9

*Ford Dealers Association v. Department of Motor Vehicles*,
      32 Cal. 3d 347 (1982) ..........................................................................................22

*Freeman v. Time, Inc.*,
      68 F.3d 285 (9th Cir. 1995) ..................................................................................21

*Gibson v. World Savings & Loan Association*,
      103 Cal. App. 4th 1291 (2002) ..................................................................9, 15, 24

*Hillsborough County v. Automated Medical Laboratories, Inc.*,
      471 U.S. 707 (1985)...............................................................................................8

*Hinshaw v. The Vessel M/V AURORA*,
      No. C05-3927, 2007 WL 1655844 (N.D. Cal. Jun. 6, 2007)...................................5

*Incalza v. Fendi North America, Inc.*,
      479 F.3d 1005 (9th Cir. 2007) ...............................................................................7

*Intel Corp. v. Hartford Accident & Indemnity Co.*,
      952 F.2d 1551 (9th Cir. 1991) ...............................................................................5

*Johnson v. Chase Manhattan Bank, USA, N.A.*,
      No. 07-526, 2007 WL. 2033833 (E.D. Pa. Jul. 11, 2007) ...................................16

*Kroske v. U.S. Bank Corp.*,
      432 F.3d 976 (9th Cir. 2005) ...................................................7, 8, 9, 10, 11, 17

*Linear Tech. Corp. v. Applied Materials, Inc.*,
      152 Cal. App. 4th 115 (2007) ...............................................................................24

*Martinez v. Wells Fargo Bank, N.A.*,
      No. C06-3327, 2007 WL 963965 (N.D. Cal. Mar. 30, 2007)................................17

*Massachussetts Mutual Life Insurance Co. v. Superior Court*,
      97 Cal. App. 4th 1282 (2002) ...............................................................................24

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
      475 U.S. 574 (1986)...............................................................................................5

*Mayor of New York v. Council of New York*,
      780 N.Y.S.2d 266, 4 Misc. 3d 151 (N.Y. App. Div. 2004) ...............................17

iv

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992)..................................................................9

*National Solid Waste Management Association v. Pine Belt Reg.
    Solid Waste Management Authority,*
    389 F.3d 491 (5th Cir. 2004) .............................................16

*Nationwide Life Insurance Co. v. Bankers Leasing Association,*
    182 F.3d 157 (2nd Cir. 1999).............................................6

*Nissan Fire & Marine Insurance Co. v. Fritz Cos.,*
    210 F.3d 1099 (9th Cir. 2000) ...........................................6

*Orkin Exterminating Co., Inc. v. F.T.C.,*
    849 F.2d 1354 (11th Cir.1988) ..........................................24

*Orr v. Bank of America,*
    285 F.3d 764 (9th Cir. 2002) .............................................6

*Pacific Gas & Electric Co. v. California ex rel. California
    Department of Toxic Substances Control,*
    350 F.3d 932 (9th Cir. 2003) .............................................9

*People v. Conway,*
    42 Cal. App. 3d 875 (1974) ...............................................23

*Podolsky v. First Healthcare Corp.,*
    50 Cal. App. 4th 632 (1996) ..............................................24

*Prata v. Superior Court,*
    91 Cal. App. 4th 1128 (2001) ............................................24

*Rice v. Santa Fe Elevator Corp.,*
    331 U.S. 218 (1947)..........................................................8

*Rose v. Chase Manhattan Bank, USA, N.A.,*
    396 F. Supp. 2d 1116 (C.D. Cal. 2005) ..............................17

*Schnall v. Hertz Corp.,*
    78 Cal. App. 4th 1144 (2000) ............................................24

*Silvas v. E*Trade Mortgage Corp.,*
    421 F. Supp. 2d 1315 (S.D. Cal. 2006)...............................16

*Smiley v. Citibank,*
    11 Cal. 4th 138 (1995) ...................................................8, 9

*Smith v. Wells Fargo Bank, N.A.,*
    135 Cal. App. 4th 1463 (2005) ..........................................24

*State Farm Fire & Casualty Co. v. Superior Court,*
    45 Cal. App. 4th 1093 (1996),
    *overruled on other grounds,*
    *Cel-Tech Communications,* 20 Cal. 4th 163 (1999) .............24

v

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) ...................................................................9, 10

*United States v. 4,432 Mastercases of Cigarettes, More Or Less*,
   448 F.3d 1168 (9th Cir. 2006) ............................................................................7

*United States v. Locke*,
   529 U.S. 89 (2000).................................................................................................8

*Wachovia Bank, N.A. v. Burke*,
   414 F.3d 305 (2d Cir. 2005)..............................................................................16

*Wang v. Massey Chevrolet*,
   97 Cal. App. 4th 856 (2002) ............................................................................24

*Wells Fargo Bank v. Boutris*,
   419 F.3d at 963 ...................................................................................................17

*Williams v. Gerber Products Co.*,
   439 F. Supp. 2d 1112 (S.D. Cal. 2006)..........................................................22

## FEDERAL STATUTES

12 C.F.R.
   § 7.4009(b).............................................................................................................18
   § 7.4009(c)(2).................................................................................................15, 17
   § 7.4009(c)(2)(viii) ..............................................................................................15
   § 34.4(a) ..........................................................................................................13, 18
   § 34.4(b).................................................................................................................17
   § 34.4(b)(1)...........................................................................................................13
   § 560.2...................................................................................................................17

12 U.S.C.
   § 371......................................................................................................................19

29 U.S.C.
   § 1144(a) ..............................................................................................................19

## STATE STATUTES

California Business & Professions Code
   § 17200 *et seq* ....................................................................................................24
   § 17500 *et seq* ....................................................................................................16

California Civil Code
   § 1760....................................................................................................................21
   § 1770(a)(5) ..........................................................................................................16
   § 1770(a)(14) ........................................................................................................16

# FEDERAL COURT RULES

Federal Rules of Civil Procedure
     Rule 56 .................................................................................................................5
     Rule 56(e) ...........................................................................................................6

MPA IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT      C06-6510 THE (BZ)

**INTRODUCTION**

The defendant in this class action, Chase Home Finance, L.L.C. ("Chase"), is a mortgage loan servicing company which processes mortgage payments for over three million borrowers (Def's MPA at 1:3, 2:17-18.)  Plaintiff T.C. Jefferson filed the action to challenge Chase's ongoing, uniform practice of falsely representing to borrowers that it will apply any payments they make beyond the their regular monthly payment, including undesignated payments, to the principal balance of their loan.  Despite making this representation in writing to borrowers, Chase routinely and systematically applies such payments to a "suspense" account until at least the next monthly payment, where it presumably is earning interest for Chase rather than reducing class members' loan principal.  As a result, Plaintiff and other borrowers pay more interest on their loans than they would if the principal were reduced by prompt crediting of the prepayments made on the loan.

Chase argues that Plaintiffs Claims under California's Unfair Competition Law and False Advertising Act seek to regulate its powers under the National Bank Act, and are therefore preempted by that Act.  However, this action only seeks to enforce state consumer laws of general application to prevent Chase's deceptive practices and to require that Chase abide by its own representations to borrowers.  Thus, it does not conflict with the powers of a national bank and no preemption theory other than conflict preemption applies under the National Bank Act.

Chase's remaining arguments, that each of Plaintiff's claims lacks merit, are based upon mistaken assumptions about the misrepresentations that form the basis for those claims.  Chase ignores completely the written representations contained in its monthly statements to the effect that undesignated additional payments will be applied to principal.[1]  In addition, Chase's arguments hinge upon the erroneous assertion that Plaintiff failed to designate his payments as prepayments of principal. In fact, he repeatedly informed Chase in writing that he intended them as principal prepayments and repeatedly requested that it credit them in that manner, rather than to "suspense."

For each of these reasons, and based upon the arguments and authorities provided herein,

---

[1]   Although Chase complains that the allegations of the complaint "are so vague and conclusory that the actual conduct at issue is not clear," it never availed itself of Fed. R. Civ. P. 12(e) to seek a more definite statement or otherwise request clarification of the allegations.  (Def's MPA at 12:21-28 n.8.)

MPA IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                    C06-6510 TEH (BZ)

1 | Plaintiff submits that Defendant's motion for summary judgment should be denied.

2 | <center>**STATEMENT OF FACTS**</center>

3 |     In approximately February, 2003, Plaintiff T.C. Jefferson refinanced his home in Oakland,

4 | California. (Declaration of T.C. Jefferson in Support of Opposition to Motion for Summary Judgment

5 | ("Jefferson Decl.") ¶ 2.) As part of the transaction, he signed a promissory note in connection with the

6 | loan which contained provisions stating that he could make prepayments on the loan without incurring

7 | charges or a penalty for doing so. (Jefferson Decl., Ex A at p. 1, ¶ 4.)

8 |     In approximately July, 2003, Chase began servicing Plaintiff's loan. (Declaration of Christina

9 | Copeland in Support of Motion for Summary Judgment ("Copeland Decl."), filed September 12, 2007,

10 | ¶ 3.) Chase has not established that it purchased or otherwise owns Mr. Jefferson's mortgage loan, and

11 | asserts only that it services the loan. (*Id.*) Within a year after the refinancing, however, Plaintiff began

12 | making his regularly monthly mortgage payments to Chase. (Jefferson Decl. ¶ 3.)

13 |     In approximately December 2004, Plaintiff decided to make additional monthly payments toward

14 | the principal of his loan in order to pay the loan off early. He telephoned Chase to ensure there were no

15 | special requirements for making such additional principal payments and spoke to a "customer care

16 | representative." (Jefferson Decl. ¶ 4.) He informed the customer care representative that he intended to

17 | start making additional, mid-month payments to be applied to principal and was told, in response, that

18 | any prepayment would be used to pay principal upon receipt. The representative did not state that the

19 | payment had to be made in any particular manner or that it could not be made electronically, and did not

20 | state that any specific type of information or form had to accompany the payment.

21 |     Not long after his conversation with the Chase customer care representative, Plaintiff began

22 | making additional monthly principal prepayments toward the balance of his loan in the amount of $167.

23 | He arranged with his bank, Wells Fargo, to have these payments made automatically each month by

24 | debiting his checking account and forwarding the amount to Chase. (Jefferson Decl. ¶ 5.) Using a free

25 | Wells Fargo "online" feature known as "bill pay," he was able to give these instructions to his bank once

26 | and be assured that the extra payment would be made each month without further action on his part. (*Id.*

27 | at ¶ 5; Declaration of G. Scott Emblidge in Support of Opposition to Motion for Summary Judgment

28 | ("Emblidge Decl."), Ex. A at 58:15-59:25.) Mr. Jefferson paid a number of his other regular bills in this

<center>2</center>

1   manner, as well. (Jefferson Decl. ¶ 5.)

2       In addition to this extra monthly payment of $167.00, Plaintiff continued to pay his regular

3   monthly mortgage payment of principal and interest.  (Jefferson Decl. ¶ 6.)  Each month, he would also

4   receive in the mail from Chase a Mortgage Loan Statement, which contained information about the

5   balance on his loan and, at the bottom of the statement, a detachable payment coupon that could be

6   included with a loan payment if paying by sending a check in the mail.  (*Id.* at ¶¶ 3, 6 & Exs. B, C, F, M,

7   O, R, U.)  At the bottom of each statement on the coupon portion, Chase included the following

8   statement to customers:

9       Please designate how you want to apply any additional funds. **Undesignated funds first**
10       **pay outstanding late charges and fees, then principal.** Once paid, additional funds
       cannot be returned.

11   (*Id.* (emphasis added).)

12       The monthly mortgage statement of the type described above is sent not just to Plaintiff, but to

13   the other borrowers whose loans are serviced by Chase. (Copeland Decl. ¶ 5.)  Thus, Chase routinely

14   and consistently represents to California borrowers that it will apply any payments in excess of their

15   regular monthly mortgage payment to the principal of their loan, after covering any outstanding late

16   charges and fees.

17       In late January 2005, Plaintiff learned that the representations made by Chase to him and other

18   borrowers regarding the manner in which his extra payments would be applied were false.  He received

19   a monthly mortgage statement from Chase which stated that his $167 payment to principal had instead

20   been applied to something called "suspense." (Jefferson Decl. ¶ 7 & Ex. C.)  Thereafter, he contacted a

21   Chase representative by telephone to inquire why the payment was not applied to the principal on his

22   loan, as Chase had previously represented to him it would.  (*Id.* at ¶ 7.)  He was informed at that time,

23   despite the previous representations to the contrary, that he would have to make a formal request in

24   writing that his extra payment be applied to principal.

25       By letter dated January 24, 2005, Plaintiff submitted his formal request to Chase that each of his

26   extra monthly payments be applied to the principal on his loan.  (Jefferson Decl. ¶ 8 & Ex. D.)  He

27   received a written a response acknowledging his request and indicating that his account had "been

28

1  noted." (*Id.* at ¶ 9 & Ex. E.) Nonetheless, the following month Plaintiff received another statement

2  indicating that his subsequent payment of $167.00 had been applied to "suspense." (*Id.* at ¶ 10 & Ex. F.)

3    During the months following his communication with Chase in January 2005, Plaintiff engaged

4  in an extended but ultimately fruitless effort to communicate with Chase about why his payments were

5  not being applied as promised and to rectify the situation. (Jefferson Decl. ¶¶ 11-20 & Exs. G-L, N, P,

6  Q, S, T.) In response to virtually all of his written communications, he received a form letter stating

7  little more than the fact that his file had been noted and that the matter had been referred to the

8  appropriate department. (*Id.*) Contrary to the contention Chase makes on this motion (Def's MPA at

9  1:20-24, 6:18-24, 7:13-16.) Plaintiff was not informed, prior to having legal counsel contact Chase on

10  his behalf, that Chase could not credit his extra payments properly because they were being made

11  through online banking. (Jefferson Decl. ¶ 21.) However, in March, 2005, he was informed that the

12  payments were not being credited to principal because Chase did not have the staff to do so. (*Id.* at

13  ¶ 11.)

14    To this day, although Plaintiff has repeatedly informed Chase, in writing and orally, that he

15  intends his extra monthly payments of $167 to be applied to the principal of his loan, Chase continues to

16  refuse to apply them in that manner. Instead, it continues to places them in "suspense" each month until

17  the next regular monthly payment is made. (Jefferson Decl. ¶ 23.) In fact, Chase concedes that it is its

18  business practice to do so, despite its representations to customers that such payments, even if

19  undesignated, will be applied to principal. (Def's MPA at 1:18-21, 4:20-5:5, 7:5-8, 16:15-18; Copeland

20  Decl. ¶ 7.) Moreover, although Chase contends that it properly applies payments to principal when the

21  borrower designates each payment as being intended for that purpose (Def's MPA at 1:15-17, 4:6-8,

22  4:12-15; Copeland Decl. ¶ 6), the evidence suggests that its practice of applying mid-month additional

23  loan payments to "suspense" extends even to payments that are specifically designated by the borrower

24  for principal. Specifically, letters from borrowers produced in discovery complain that Chase applied

25  their payments improperly even though the payments were designated as Chase contends is required.

26  (Declaration of Mark T. Johnson in Support of Opposition to Motion for Summary Judgment ("Johnson

27  Decl.") ¶ 2 & Ex. A.)

28    As a result of Chase's practice, the principal balance on the loans on which prepayments are

4

1   made is not reduced as intended, and Jefferson and other borrowers pay more interest on the loan than if

2   the extra payment toward principal applied as represented and promised by Chase.

3        Having been unsuccessful in his informal efforts to get Chase to correct its actions, and believing

4   that the problem was a systemic one affecting other borrowers, Jefferson filed this action in Alameda

5   County Superior Court on August 24, 2006, seeking to represent himself and a class of similarly situated

6   persons.  The action was removed to this Court on October 18, 2006.  The operative complaint alleges

7   four causes of action:  (1) violation of the California Consumer Legal Remedies Act, Civil Code § 1750

8   *et seq.* ("CLRA"); (2) violation of California Business & Professions Code § 17500 *et seq.*; (3) violation

9   of Business & Professions Code § 17200 *et seq.*; and (4) conversion under Civil Code § 3336.  Chase

10  filed an Answer on June 8, 2007, and noticed this motion for summary judgment on September 12,

11  2007.  Also pending is Plaintiff's Motion for Class Certification, which is set for hearing on December

12  10, 2007.

**ARGUMENT**

13

14  **I.      AS THE MOVING PARTY ON A MOTION FOR SUMMARY JUDGMENT, CHASE
        HAS THE BURDEN OF PRODUCTION AND THE ULTIMATE BURDEN OF
15      PERSUADING THE COURT THAT NO GENUINE ISSUE OF MATERIAL FACT
        EXISTS AND THAT IT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.**
16

17       Summary judgment may be properly granted when no genuine disputed issues of material fact

18  remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly

19  entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

20  (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987); *Hinshaw v. The Vessel*

21  *M/V AURORA*, No. C05-3927, 2007 WL 1655844, at *1-2 (N.D. Cal. Jun. 6, 2007).  Since "[t]he

22  moving party bears the burden of showing that there is no material factual dispute[,] . . . the court must

23  regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material."

24  *Hinshaw,* 2007 WL 1655844, at *2 (citing *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289).  The

25  court is required to draw all reasonable inferences in favor of the party against whom summary

26  judgment is sought.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Intel*

27  *Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

28       Where, as here, the moving party (typically the defendant) does not have the ultimate burden of

5

persuasion at trial, it bears both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727 (3d ed. 1998)). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* at 1102 (citing *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990)). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Id.*

Where the moving party seeks to negate an essential element of the nonmoving party's claim or defense or otherwise establish facts in support of its contention that it is entitled to judgment as a matter of law, the evidence introduced must be admissible under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56(e); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). Evidence that would be inadmissible at trial may not be considered on a motion for summary judgment. *Id.*

Because summary judgment is a "drastic device," cutting off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any triable issue of material fact. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2nd Cir. 1999).

As argued herein, Chase has failed either to meet its burden of production or its burden of persuasion on this motion for summary judgment. The affidavits and exhibits it submits to establish facts on which it bases its legal arguments are, in significant respects, inadmissible and may not be considered by this Court in ruling on the motion. [2] Its argument that Plaintiff's claims are preempted by federal law is superficial, unsound and contrary to established judicial authority. Finally, its analysis of the merits of Plaintiff's claims are based upon a mischaracterization of Plaintiff's claims as being

---

[2] Plaintiff has separately filed objections to portions of the declarations and attached exhibits submitted by Chase in support of its motion for summary judgment and requests that the Court consider and rule on those objections prior to ruling on the motion for summary judgment. As the objections indicate, virtually none of the evidence produced by Chase on this motion is admissible.

1  directed solely at the legality or fairness of Chase's payment processing practices, as opposed to Chase's

2  affirmative misrepresentation made to Jefferson and other borrowers about how their prepayments

3  would be applied, and the failure of those practices to adhere to such representations.

4  **II.   NEITHER THE NATIONAL BANK ACT NOR REGULATIONS ADOPTED BY THE OFFICE OF THE COMPTROLLER OF THE CURRENCY PREEMPT THE**
5  **CONSUMER PROTECTION CLAIMS ASSERTED BY PLAINTIFF**

6        As this Circuit and the Supreme Court have repeatedly stated, there are three types of federal

7  preemption, commonly known as express preemption, field or complete preemption and conflict

8  preemption:

9           Federal law may preempt state law under the Supremacy Clause in three
          ways. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 [] (1990). First, Congress
10         may state its intent through an express preemption statutory provision. *Id.*
          at 78-79 []. Second, "in the absence of explicit statutory language, state
11         law is preempted where it regulates conduct in a field that Congress
          intended the Federal Government to occupy exclusively." *Id.* at 79 [].
12         Such an intent may be inferred from a "scheme of federal regulation . . . so
          pervasive as to make reasonable the inference that Congress left no room
13         for the States to supplement it," or where an Act of Congress "touch[es] a
          field in which the federal interest is so dominant that the federal system
14         will be assumed to preclude enforcement of state laws on the same
          subject."
15
          *Id.* (alterations in original) (quoting *Rice v. Santa Fe Elev. Corp.*, 331 U.S.
16         218, 230 [] (1947).)  Finally, state law that actually conflicts with federal
          law is preempted. *Id.* "Thus, the Court has found pre-emption where it is
17         impossible for a private party to comply with both state and federal
          requirements, or where state law stands as an obstacle to the
18         accomplishment and execution of the full purposes and objectives of
          Congress." *Id.* (citations and quotations omitted).
19

20  *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 981 (9th Cir. 2005).  *See also United States v. 4,432*

21  *Mastercases of Cigarettes, More Or Less*, 448 F.3d 1168, 1189 (9th Cir. 2006) (quoting *Air*

22  *Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 495

23  (9th Cir. 2005), *cert. denied*, 126 S.Ct. 2887 (2006)); *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010

24  n.2 (9th Cir. 2007).

25        Although Chase acknowledges each of these three separate theories of federal preemption (Def's

26  MPA at 8:24-28 n.7), it fails to state which of the theories is the basis for its motion for summary

27

28

judgment, conflating them by arguing preemption in general terms and without regard to the particular

showing required to establish federal preemption of state laws under each of the theories.[3]  As discussed

below, Chase fails to establish that Plaintiff's claims or the state laws on which they are based are

preempted under any of the three categories.[4]

### A. There is a Presumption Against Federal Preemption of State Law, Which Defendant Has the Burden of Overcoming.

Whenever Congress legislates in a field where states have also traditionally legislated, there is a

presumption against federal preemption, which the party advocating preemption must overcome. *Bates*

*v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005) ("In areas of traditional state regulation, we assume

that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and

manifest.'" (citations omitted)); *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989); *Hillsborough*

*County v. Automated Med. Lab., Inc.*, 471 U.S. 707, 716 (1985); *Rice v. Santa Fe Elevator Corp.*, 331

U.S. 218, 230 (1947) ("we start with the assumption that the historic police powers of the States were

not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress").

Although the presumption against preemption may not apply "when the State regulates in an area

where there has been a history of significant federal presence" *United States v. Locke*, 529 U.S. 89, 108

(2000); *see also Bank of Am. v. City & County of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002), it

remains in effect even then, when the state legislation is a law of general application which was enacted

pursuant to the State's historic police powers. *Kroske*, 432 F.3d at 981.  In *Kroske*, for example, the

Ninth Circuit held that the presumption against preemption applied when a former employee of a

national bank sued the bank for age discrimination under Washington State's anti-discrimination statute,

---

[3]  Chase cites *Smiley v. Citibank*, 11 Cal. 4th 138, 148 n.3 (1995) for the proposition that "the three categories of preemption are often analyzed together," as though that fact justifies its non-specific analysis.  What footnote 3 of the *Smiley* decision actually says is that the three categories are not "rigidly distinct."   Regardless, any overlap or similarity which may exist among the three categories of preemption does not obviate the need to make a specific showing that the elements of preemption exist under at least one of the three theories.

[4]  Plaintiff does not dispute that operating subsidiaries of a national bank may assert a preemption defense.  (Def's MPA at 9:14-10:24.)  Here however, Chase has failed to present any competent, admissible evidence that it is an operating subsidiary of a national bank.  (*See* Plaintiff's Objections to Evidence, filed herewith at 3.)

1   notwithstanding a specific provision in the National Bank Act granting national banks complete

2   authority to dismiss such officers "at pleasure." The court acknowledged the "significant federal

3   presence in the regulation of national banks" but held that the presumption against preemption applied

4   because the state law had been enacted pursuant to the State's historic police powers. *Id.; see also Pac.*

5   *Gas & Elec. Co. v. California ex rel. Cal Dep't of Toxic Substances Control*, 350 F.3d 932, 943 (9th Cir.

6   2003) (presumption against preemption of generally applicable state law applies in bankruptcy area);

7   *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1328-29 (11th Cir. 2001) ("Although

8   the federal government through the ICCTA has legislated in an area where there has been a history of

9   significant federal presence, . . . West Palm Beach is acting under the traditionally local police power of

10  zoning and health and safety regulation."(footnote, citation and internal quotation marks omitted)).

11      The state laws at issue in this case, the CLRA, FAA and UCL, are laws of general application

12  enacted pursuant to the State's police power to protect consumers from deceptive and unlawful acts or

13  practices. It is well established that consumer protection is an area traditionally regulated by the states

14  pursuant to their historic police powers. *See, e.g., ARC Am. Corp.*, 490 U.S. at 101; *Fla. Lime &*

15  *Avocado Growers v. Paul*, 373 U.S. 132, 146 (1963) (enactment of statute to "prevent the deception of

16  consumers" is an exercise of the state's police powers); *Smiley*, 11 Cal. 4th at 148; *Gibson v. World Sav.*

17  *& Loan Ass'n*, 103 Cal. App. 4th 1291, 1300 (2002). Accordingly, under *Kroske* and the other

18  authorities cited above, Chase must overcome a strong presumption that Plaintiff's claims are not

19  preempted.

20      **B.**    **Express Preemption Does Not Apply to Plaintiff's Claims Because the National**
            **Bank Act Contains No Language Indicating that Congress Intended that the Act**

21              **Supplant Applicable State Laws.**

22      "Express preemption exists where Congress enacts an explicit statutory command that state law

23  be displaced." *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir. 2003), *Morales v. Trans World Airlines,*

24  *Inc.*, 504 U.S. 374, 382 (1992). A prime example of a federal enactment by which Congress issued such

25  a command is the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a), which

26  provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate

27  to any employee benefit plan."

28      Chase makes no effort in support of its preemption argument to identify any statutory provision

                                            9

1   or language of the National Bank Act which it contends expressly preempts state laws concerning real

2   estate lending or mortgage loan servicing.  Instead, it relies upon the general language of the statute that

3   authorizes national banks to engage in real estate lending, the regulations promulgated by the Office of

4   the Comptroller of the Currency on the applicability of state laws concerning real estate lending, and

5   judicial decisions holding that state laws are preempted when they conflict with or frustrate the purpose

6   of the National Bank Act.  (Def's MPA at 7:22-15:17.) [5]

7         In the absence of any Congressional statement in the National Bank Act that the state laws at

8   issue in this case are displaced by that Act and the regulations thereunder, there is no basis for finding

9   that Plaintiff's claims are expressly preempted.

10        **C.    Field Preemption Does Not Apply to Plaintiff's Claims Because Neither the
              Structure Nor the Purpose of the National Bank Act Indicates That Congress
11            Intended to Occupy the Entire Field of Banking or Real Estate Lending.**

12        Even in the absence of an explicit statutory directive from Congress that all state laws regulating

13   the subject of the federal legislation are preempted, Congressional intent to preempt such laws may be

14   inferred where it appears from the nature and scope of the federal statute that Congress intended it to be

15   the exclusive regulatory scheme governing the subject. *Ting,* 319 F.3d at 1135-36. Such "field"

16   preemption is sometimes referred to as "complete preemption." *Id.* It is established where federal law

17   constitutes a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that

18   Congress left no room for the States to supplement it, or where an Act of Congress touch[es] a field in

19   which the federal interest is so dominant that the federal system will be assumed to preclude

20   enforcement of state laws on the same subject." *Kroske,* 432 F.3d at 981 (citations and internal

21   quotation marks omitted).

22        No case that Chase has cited or that Plaintiff has been able to uncover has held that Congress

23   intended the National Bank Act to occupy the entire field of banking or real estate lending by national

24   _____

25        [5]    Although Chase argues that "[s]tate attempts to regulate the enumerated areas of a national
     bank's or its operating subsidiary's business are *expressly* preempted by federal law . . . ," it fails to cite
26   to any statutory provision for that conclusion, relying instead on the OCC regulation at 12 C.F.R §
     34.4(b). (Def's MPA at 12:8-12 (emphasis added)).  Express preemption, however, only exists where
27   *Congress* has enacted an explicit *statutory* directive preempting all state laws on the subject. *Ting,* 319
     F.3d at 1135.

28

MPA IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                    C06-6510 TEH (BZ)

1   banks.  To the contrary, it is well established that "federal substantive authority over national banks is

2   not exclusive." *Kroske,* 432 F.3d at 982 (quoting *Wells Fargo Bank N.A. v. Boutris,* 419 F.3d 949, 963

3   (9th Cir. 2005)); *Bank of Am.,* 309 F.3d at 558-59 (state regulation of banking is permissible when it

4   "does not prevent or significantly interfere with the national bank's exercise of its powers" (citing

5   *Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 33 (1996))).  As the Ninth Circuit stated in

6   *Kroske*:

7            regulation of banking has been one of dual control [with the states] since
             the passage of the first National Bank Act." *Nat'l State Bank v. Long,* 630
8            F.2d 981, 985 (3d Cir.1980). Accordingly, federal banking statutes and
             regulations do not "deprive States of the power to regulate national banks,
9            where . . . doing so does not prevent or significantly interfere with the
             national bank's exercise of its powers.
10

11  *Kroske,* 432 F.3d at 982 (citing *Barnett Bank,* 517 U.S. at 33).

12       **D.    Conflict Preemption Does Not Bar Plaintiff's Claims Because the
                 Application of the State Laws on Which Plaintiff Bases his Claims**
13  **             Does Not Obstruct or Significantly Impair the Exercise of any Powers
                 Authorized by the National Bank Act.**
14

15       Having failed to address, much less establish, the specific requirements of express and field

16  preemption, Chase is left with the third category of preemption: conflict preemption.  Establishing the

17  preemption of state laws under the National Bank Act on this theory of preemption requires a showing

18  that application of the particular laws at issue would "forbid, or . . . impair significantly, the exercise of a

19  power that Congress explicitly granted." *Barnett Bank,* 517 U.S. at 33.  Thus, the test for conflict

20  preemption requires two findings: (1) that conduct for which the bank or operating subsidy asserts

21  preemption involves the exercise of some power expressly authorized by the National Bank Act, or

22  incidental to such power, and (2) that application of the state law would forbid or significantly impair

23  the exercise of that power.

24       Chase's argument on preemption and its declarations in support of that argument fail to establish

25  either of these elements of conflict preemption.  Chase's contention that the state claims asserted by

26  Plaintiff conflict with the business of banking or real estate lending authorized by the National Bank Act

27  is based upon a misunderstanding of the claims alleged.  Plaintiff's claims and the laws on which they

28  are based do not seek to regulate the terms or conditions of Plaintiff's loan or Chase's processing of his

                                                   11

1   payments.  They merely seek relief for deceptive practices engaged in by Chase, including affirmative

2   misrepresentations made by Chase to Plaintiff and other members of the putative class about how their

3   payments will be applied.  Nothing in the National Bank Act authorizes Chase to engage in such

4   deceptive practices, so the assertion of state law claims to address such practices raises no issue of

5   conflict preemption.

6       Additionally, although Chase asserts that it "services" Plaintiff's mortgage loan, it presents no

7   facts establishing that it has engaged in real estate lending in connection with Mr. Jefferson's loan,

8   which was not originated by Chase.  Loan servicing which is otherwise divorced from the activity of real

9   estate lending, is not an express power of the National Bank Act.

10          **1.     Plaintiff's Claims Are Not Preempted Because They Do Not
                     Obstruct or Significantly Impair Chase's Ability to Engage in**
11          **Real Estate Lending or the Processing of Mortgage Loan**
                     **Payments.**
12

13      Because Chase fails to separately address the three different categories of federal preemption and

14  fit the facts of this case into one of those categories, it makes no effort to articulate the manner in which

15  Plaintiff's claims might actually conflict with the its ability to exercise its powers under the National

16  Bank Act.  Instead, it tends to assume preemption based upon nothing more than the fact that Plaintiff's

17  claims are directed at Chase's loan servicing and payment processing activities.  That approach,

18  however, is essentially one of field preemption.  As noted above, neither the OCC nor the courts have

19  adopted the position that Congress intended the National Bank Act to be the exclusive means by which

20  the conduct of national banks would be regulated.

21      The United States Supreme Court has held that conflict preemption under the National Banking

22  Act exists only when a state law "forbid[s], or . . . impair[s] significantly, the exercise of a power that

23  Congress explicitly granted." *Barnett Bank,* 517 U.S. at 33.  To be preempted, a state law must

24  "significantly interfere" with the national bank's exercise of such powers. *Id.* (citing *Anderson Nat'l*

25  *Bank v. Luckett*, 321 U.S. 233, 247-52 (1944)).  It is only significant impairment or outright obstruction

26  of a bank's Congressionally granted powers that is the basis for finding conflict preemption. *Barnett*

27  *Bank* makes clear that state laws are preempted only when they create an "irreconcilable conflict" with

28  federal statutes governing the powers of national banks.  517 U.S. at 31.

                                                12

1    Even if it is assumed that Chase is the operating subsidiary of a National Bank and that its

2  conduct at issue in this case involves the exercise of authority granted to it by the National Bank Act

3  (*see* Section II. D. 2, below), the state law claims asserted by Plaintiff do not obstruct, impair, or

4  condition Chase's ability to exercise that authority, and are therefore not preempted.  12 C.F.R. §34.4(a).

5  Chase's contention to the contrary rests on an incomplete and misleading characterization of Plaintiff's

6  claims, as discussed below.

7    In an effort to bring Jefferson's claims within the purview of the preemption doctrine, Chase

8  ignores the fact that such claims are not based strictly upon the unfairness or illegality of Chase's loan

9  servicing and payment practices, in the abstract, *but upon Chase's own affirmative misrepresentations to*

10  *Jefferson and other customers about those practices*.  Thus, Chase mischaracterizes Plaintiff's claims as

11  follows:

12        These claims are premised on the theory that upon receipt of certain
         monies (not identified as prepayments) from Plaintiff, Chase was required
13        to immediately apply the monies to Plaintiff's account as partial
         prepayments of principal, rather than holding the monies in suspense until
14        Plaintiff provided direction as to how he wanted these monies applied.
         Plaintiff's theory of recovery is simply an attempt to use state law to
15        regulate Chase's business practices.

16  (Def's MPA at 12:13-19.)  Elsewhere, Chase states that: "Plaintiff claims that Chase's procedure for

17  processing Plaintiff's mid-month payments is an unfair business practice" (*Id.* at 13:9-11) and that

18  "Plaintiff is attempting to use state law to regulate Chase's business practices by imposing additional

19  requirements on Chase beyond any requirements in the mortgage contract or under federal law with

20  respect to the processing of mortgage payments." (*Id.* at 15:1-4.)

21    In point of fact, Plaintiff's claims do not seek to impose any particular loan processing

22  requirements or procedures on Chase or to regulate its loan servicing practices in any way.  Rather, they

23  are directed at Chase's own representations and promises regarding how payments will be processed and

24  seek nothing more than to require that Chase adhere to those representations and promises.  In that

25  sense, they are analogous to contract claims, which the OCC has explicitly identified as being outside

26  the preemptive scope of the National Bank Act and its regulations.  12 C.F.R. § 34.4(b)(1).

27    In addition to the provisions in Jefferson's note and deed of trust that he would be able to make

28  prepayments toward the principal of his loan without penalty, Chase represented to him, as well as to

13

1   other customers, that any payments he made over and above the regularly required payment of principal

2   and interest would be applied to principal, after the payment of any outstanding late charges and fees.

3   Furthermore, contrary to Chase's position on this motion, such representations were not in any way

4   conditioned upon the borrower designating the manner in which the payment should be applied.  In fact,

5   they explicitly stated such payments would be applied to principal even when not so designated.  These

6   representations were made repeatedly to Jefferson and other customers in the form of their mortgage

7   loan statement and payment coupon, which included the following language:

8          Please designate how you want to apply any additional funds.
       **Undesignated funds first pay outstanding late charges and fees, then**
9          **principal.**  Once paid, additional funds cannot be returned.

10  (Jefferson Decl. ¶ 3 & Ex. B (emphasis added); Copeland Decl. ¶ 5.)

11         Consequently, the essence of each of Plaintiffs claims is as he stated in his deposition when

12  asked what Chase had done wrong:  "They represented that they would credit my prepayment mortgage

13  payments properly.  They have consistently failed to do that."  (Emblidge Decl. Ex. A at 140:11-13.)

14  Similarly, the First Amended Complaint ("FAC") establishes that the basis for plaintiff's claims are

15  Chase's misrepresentations about the manner in which it would apply prepayments made by Jefferson

16  and other customers.  It asserts, for example, that Chase violated the California Consumer Legal

17  Remedies Act by representing that its services had characteristics that they did not have, Cal. Civ Code

18  § 1770(a)(5), by advertising goods or services with the intent not to sell them as advertised, Cal. Civ.

19  Code § 1770(a)(9), and by representing that a transaction conferred or involved rights, remedies, or

20  obligations which it does not have or involve, Cal. Civ. Code § 1770(a)(14).  (FAC ¶¶ 20-22.)  It also

21  alleges that Chase violated the California False Advertising Act, Cal. Bus. & Prof. Code § 17500 *et seq.*,

22  by making untrue and/or misleading statements and representations to the effect that "consumers could

23  make prepayments without penalty, and/or that such payments would reduce the total amount of interest

24  paid in the life of the loan, and/or that such payments would be promptly applied to the consumers'

25  accounts."  (FAC ¶¶ 28-30.)  Because Chase's misrepresentations violated both of these laws, it also

26  violates California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.  Enreach Tech.,*

27  *Inc. v. Embedded Internet Solutions, Inc.,* 403 F. Supp. 2d 968, 977 (N.D. Cal. 2005) (citing *Korea*

28  *Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1143 (2003) (the UCL "borrows" violations

14

1    from other laws and makes them independently actionable as unfair business practices)).  Finally,

2    Plaintiff asserts a claim for conversion based upon the fact that Chase represented that it would apply his

3    extra payments to his account, and instead applied it to "suspense," presumably earning interest for

4    Chase rather than paying down the principal on Plaintiff's loan.

5         This distinction between state laws or regulations which seek to impose particular requirements

6    or on a bank, such as limitations on interest rates or affirmative disclosures, and laws of general

7    application which merely require *all* businesses, including banks, to refrain from misrepresentations and

8    to abide by its contracts, promises and representations to customers, is critical to the analysis of conflict

9    preemption.  State consumer protection statutes such as those at issue in this case, when invoked against

10   a bank or its operating subsidies merely to impose an obligation that they be truthful in their

11   representations to customers and that they adhere to promises and representations made to those

12   customers, can hardly be said to obstruct or impair the bank's ability to exercise its authority under the

13   National Bank Act.  Nothing in the National Bank Act or the OCC regulations suggests that the

14   authority granted to national banks includes the authority to lie to or deceive customers.  Nor do those

15   enactments provide any basis for concluding that national banks or their operating subsidies are exempt

16   from the enforcement of state consumer protection laws when they do so.

17        The OCC recognizes that state laws which only "incidentally affect" the exercise of a national

18   bank's powers are not preempted.  12 C.F.R. §§ 7.4009(c)(2) & 7.4009(c)(2)(viii).  In this context,

19   "incidentally" does not merely mean "de minimus."  Instead, a state law "incidentally" affects a national

20   bank if it is not directed exclusively against it – that is, if it is a law of general applicability which

21   governs all persons or entities, some of whom happen to include national banks.  As one court,

22   interpreting similar language in the OTS regulations, 12 C.F.R. § 560.2, has stated:

23           The duties to comply with contracts and the laws governing them and to
             refrain from misrepresentation, together with the more general provisions
24           of the UCL, are principles of general application. They are not designed to
             regulate lending and do not have a disproportionate or otherwise
25           substantial effect on lending. To the contrary, they are part of the legal
             infrastructure that undergird all contractual and commercial transactions.
26           Therefore, their effect is incidental and they are not preempted.

27   *Gibson*, 103 Cal. App. 4th at 1303-04; *see also Fenning v. Glenfed, Inc.*, 40 Cal. App. 4th 1285 (1995)

28   (fraud claim not preempted because the fraudulent deception was unrelated to the thrift's lending

15

1   practices); *Silvas v. E\*Trade Mortg. Corp.*, 421 F. Supp. 2d 1315, 1320 (S.D. Cal. 2006) (distinguishing

2   *Gibson* on the basis that the UCL claims asserted were based upon alleged violations of the federal

3   Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*, and were specific to Defendant's lending activities, not

4   general legal duties applicable to all businesses.)[6]

5       Plaintiff's claims are based on general commercial laws that apply to all businesses, and thus do

6   not fall within the exception to the OCC's savings clause.  The CLRA, UCL and FAA are broad

7   consumer protection statutes of general applicability.  None of those statutes targets national banks for

8   regulation or discriminates against them.  None specifically focuses on deposit-taking activities.  The

9   CLRA provisions at issue prohibit deceptive representations.  *See, e.g.*, Cal. Civ. Code §§ 1770(a)(5)

10  and 1770(a)(14).  The UCL contains a simple, broad prohibition against unlawful, unfair, or fraudulent

11  acts or practices by any business.  It has been held to apply to any business act or practice.  *Cel-Tech*

12  *Commc'n, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *Barquis v. Merchants*

13  *Collection Ass'n*, 7 Cal. 3d 94, 111-12 (1972).  The same is true for the FAA which prohibits false

14  advertising.  Cal. Bus. & Prof. Code § 17500 *et seq.*

15      In short, the state laws upon which plaintiff relies are exactly the type of generally applicable

16  state commercial laws that are preserved from preemption by the OCC's Savings Clause.  Each of these

17  laws applies to all California businesses, and no more than incidentally regulates the business of banking

18  or real estate lending.

19      The cases relied upon by Chase as examples of instances where state law is preempted are each

20  distinguishable.  They fall into either of two categories: (1) cases in which the state has enacted a law

21  specifically directed at banking activity and which overtly attempt to proscribe or even prohibit the

22  exercise of powers authorized by the National Bank, *Bank of Am.*, 309 F.3d 551; *Wachovia Bank, N.A.*

23  *v. Burke*, 414 F.3d 305, 321 (2d Cir. 2005); *Johnson v. Chase Manhattan Bank, USA, N.A.*, No. 07-526,

24  _____

    [6]  Cases interpreting other legal regimes confirm that laws that only "incidentally affect" a business are
25  laws that apply generally to all businesses. *See, e.g., Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg.
    Solid Waste Mgmt. Authority*, 389 F.3d 491, 497 (5th Cir. 2004) (a law incidentally affects interstate
26  commerce if it is an evenhanded ordinance that does not facially discriminate against out-of-state
    interests; only if the burden it poses is "clearly excessive" will it be found to more than "incidentally
27  affect" interstate commerce (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 140 (1970))).

28

MPA IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                    C06-6510 TEH (BZ)

1   2007 WL 2033833 (E.D. Pa. Jul. 11, 2007); *Mayor of New York v. Council of New York*, 780 N.Y.S. 2d

2   266, 272, 4 Misc. 3d 151, 157 (N.Y. App. Div. 2004)), or (2) cases in which a plaintiff attempted to use

3   state law to impose specific obligations on national banks untethered to false representations made by

4   the bank or the bank's systematic breach of its contract with customers, *Rose v. Chase Manhattan Bank,*

5   *USA, N.A.*, 396 F. Supp. 2d 1116, 1118 (C.D. Cal. 2005); *Martinez v. Wells Fargo Bank, N.A.*, No. C06-

6   3327, 2007 WL 963965 (N.D. Cal. Mar. 30, 2007).[7] In this case, by contrast, Plaintiff's claims are

7   based upon Chase's own affirmative misrepresentation to him and to other borrowers and its systematic

8   breach of their mortgage loan contracts. The use of state consumer protection laws of general application

9   to seek judicial relief based upon Chase's representations to borrowers and its contract obligations

10  clearly does not frustrate the purposes of the National Bank Act or conflict with any authority granted to

11  national bank's under the Act. *Cf.* 12 C.F.R. §§ 7.4009(c)(2) & 12 C.F.R. 34.4(b) (exempting state tort

12  and contract claims from federal preemption).

13        Chase also relies upon cases decided under the Home Owners' Loan Act ("HOLA"), 12 U.S.C.

14  § 1461 *et seq.*, and regulations promulgated by the Office of Supervision ("OTS"), arguing that alleged

15  similarities between those regulations and the OCC regulations support its position in favor of

16  preemption in this case. (Def's MPA at 14:23-15:28 n.9 (citing *Washington Mut. Bank, F.A. v. Superior*

17  *Court*, 95 Cal. App. 4th 606, 621 (2002); *Lopez v. World Sav. & Loan Ass'n*, 105 Cal. App. 4th 729, 742

18  (2003)).) Those authorities are inapposite, however because both the OTS regulations and courts

19  considering preemption arguments in the context of the HOLA have determined that congress intended

20  to preempt the field of mortgage lending regulations under the HOLA. 12 C.F.R. § 560.2; *Bank of Am.*,

21  309 F.3d at 561 (applying different analysis to preemption under the HOLA and the National Bank Act).

22  Here, even assuming Chase is an operating subsidiary of Chase Manhattan National Bank, there is no

23  field preemption. *See Kroske*, 432 F.3d at 982; *Wells Fargo Bank v. Boutris,* 419 F.3d at 963.

---

26      [7]   Moreover, in *Rose* the UCL claim relied upon another state law as the predicate statute for establishing the "unlawful" prong of the UCL. That statute imposed affirmative disclosure obligations on banks which were inconsistent with their authority under the National Bank Act. *Rose*, 396 F. Supp. 2d at 1123.

17

**2.    Chase Has Made No Showing That Its Actions as a Loan Servicing Company, Rather than a Real Estate Lender, Involve the Exercise of Any Power Granted to National Banks by Congress.**

The foregoing discussion assumes that the activities of Chase at issue in this action involve the exercise of powers explicitly granted to national banks by Congress. State laws, and claims asserted thereunder, are only preempted by the National Bank Act to the extent that they "forbid, or . . . impair significantly, **the exercise of a power that Congress explicitly granted.**" *Barnett Bank,* 517 U.S. at 33 (emphasis added); *First Nat'l Bank of San Jose v. State of California*, 262 U.S. 366, 369 (1923) (a state's attempt to control the conduct of national bank is preempted "whenever it conflicts with the laws of the United States or frustrates the purposes of the national legislation, or impairs the efficiency of the bank **to discharge the duties for which it was created** (emphasis added)). Similarly, 12 C.F.R. section 7.4009(b) states, in relevant part:

> (b) Applicability of state law. Except where made applicable by Federal law, state laws that obstruct, impair, or condition **a national bank's ability to fully exercise its powers to conduct activities authorized under Federal law** do not apply to national banks.

12 C.F.R. § 7.4009(b) (emphasis added).

In this case the specific power on which Chase bases its preemption argument is the power to engage in real estate lending. Specifically, it relies upon 12 C.F.R. section 34.4, which states, in relevant part:

> (a) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its **Federally authorized real estate lending powers** do not apply to national banks. Specifically, **a national bank may make real estate loans** under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning .
> . . .

12 C.F.R. § 34.4(a) (emphasis added).

The fatal flaw in the bank's argument is that it does not establish, or even contend, that it was engaged in real estate lending in connection with its actions at issue in this case or that its loan servicing and payment processing activities were undertaken for real estate loans that it had made or acquired. Chase acknowledges that was not the originator of Mr. Jefferson's residential mortgage loan (Copeland Decl., ¶ 3), and fails to state that it purchased his loan or that it made or purchased any other mortgage

18

1   loans that it services.  Instead, it consistently identifies itself as a loan serving company that "services"

2   Jefferson's loan, rather than as the lender or the owner of note.  (Def's MPA at 1:3-4, 5:16; Copeland

3   Decl. ¶ 3.)  "Servicing" a real estate loan, however, in and of itself, is not an authorized banking activity

4   which enjoys immunity from state consumer protection laws under the terms of the National Bank Act

5   or the applicable regulations.  It is only when the bank is engaged in real estate lending that state laws

6   regulating the terms of the loan and certain loan related activities are preempted.

7        Thus, Chase's reliance on specific subparagraphs of 12 C.F.R. section 34.4(a) is misplaced.  It

8   identifies subparagraphs (4), ("The terms of credit, including schedule for repayment of principal and

9   interest, amortization of loans, balance, payments due, . . ."), (10) ("Processing, origination, servicing,

10  sale or purchase of, or investment or participation in, mortgages"), (11) ("Disbursements and

11  repayments"), and (12) ("Rates of interest on loans"), as the basis for its contention that Plaintiff's

12  claims are preempted.  (Def's MPA at 11:26-12:9.)  Those subparagraphs must be read in the context of

13  the language of the main introductory paragraph, however.  That language makes it clear that it is only

14  in connection with the making of real estate loans under 12 U.S.C. section 371 and 12 C.F.R. section

15  34.3, that a national bank can act without regard to state law limitations concerning the subjects and

16  activities listed within the subparagraphs relied upon by Chase.[8]

17       Since Chase has not established that it made a real estate loan to Jefferson, that the conduct

18  challenged by Jefferson in this action involved real estate lending, or that the claims asserted by him

19  would obstruct or significantly impair Chase's ability to exercise its authority under the National Bank

20  Act to engage in real estate lending, its argument that Jefferson's claims are preempted by federal law

21  must fail.

22  ///

23  ///

24  ///

25

26      [8] 12. U.S.C. section 371 provides that "Any national banking association may make, arrange,
    purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to
27  section 1828(o) of this title and such restrictions and requirements as the Comptroller of the Currency
    may prescribe by regulation or order."  12 U.S.C. § 371.

28

**III.    EACH OF PLAINTIFF'S CLAIMS ARE MERITORIOUS AND NOT
SUCCEPTIBLE TO SUMMARY JUDGMENT BASED UPON THE
ARGUMENTS MADE BY CHASE**

    **a.   Plaintiff's Consumer Legal Remedies Act Claim is Based Upon Direct
Misrepresentations Made by Chase Which Resulted in the Monetary Loss to
Plaintiff**

The first cause of action alleged by Plaintiff in the First Amended Complaint is for Violation of

the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*  Specifically, Plaintiff alleges that

Chase made representations that its services had sponsorship approval characteristics or benefits that

they did not have, in violation of Cal. Civ. Code § 1770(a)(5) that it advertised goods or services with

the intent not to sell them as advertised in violation of California Civil Code section 1770(a)(9), and that

it made representations that a transaction conferred or involved rights, remedies or obligations which it

did not have in violation of California Civil Code section 1770(a)(14).  (FAC ¶¶ 20-22.)  The

misrepresentations made by Chase include the fact that consumers could make prepayments on their

loan serviced by Chase without penalty and that such payments would reduce the total amount of

interest paid on the life of the loan and would be promptly applied to the consumer's accounts.  (FAC ¶

29.)  In particular, Chase made the following representation in its monthly mortgage loan statement sent

to the person whose loan was serviced by Chase:

> **Please designate how you want to apply any additional funds.
> Undesignated funds first pay outstanding late charges and fees then
> principal. Once paid additional funds cannot be returned.**

(Jefferson Decl. ¶ 3 & Ex. B (emphasis added); *see also* Copeland Decl. ¶¶ 5-6.)

Chase does not dispute that it routinely mailed the mortgage loan statement containing this

representation to customers whose loan it serviced.  (Copeland Decl. ¶ 5.)  Nonetheless it boldly states

that "Chase was not a party to and did not make any representations to Plaintiff regarding his mortgage

loan transaction." (Def's MPA at 22:14-15.)[9]  Notwithstanding these admissions, Chase focuses its

---

    [9]    Chase cites the deposition testimony of Mr. Jefferson at page 132, lines 17-18 in support of
this statement.  The transcript of Mr. Jefferson's deposition is not admissible in this motion, however.
(*See* Plaintiff's objections to evidence at 2-3.)  If considered by the Court however, it must be noted that
Mr. Jefferson's testimony at that point is in response to an inquiry that is specifically limited to "at the
time you entered into the mortgage loan agreement with . . . Bay Federal Credit Union" (
Dec. of Robert Emmanuel ISO Mot. Sum. Jdgmt., Ex. G at 132:8-16.)  Elsewhere, however in response
to a line of inquiry regarding what Chase did that is the subject of the complaint Mr. Jefferson responds
(continued on next page)

MPA IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT        C06-6510 TEH (BZ)

1   entire argument on the merits of Plaintiff's CLRA claim on advertisements and mailings received by

2   Jefferson from Chase regarding an equity accelerator program.  Because Jefferson never enrolled in the

3   equity accelerator program Chase argues that he lacks standing.  (Def's MPA at 23:8-12.)

4          Defendant's argument regarding the equity accelerator program is a red herring.  The core of

5   Plaintiff's CLRA claim is that Chase represented to him and to similarly situated customers that it would

6   properly apply prepayments made in excess of the regularly monthly mortgage payment to the principal

7   on their loans, even when the amount paid was "undesignated" for that purpose.  That representation,

8   repeatedly made to customers and admitted to by Chase in the form of the monthly mortgage statement

9   and the payment coupon mailed to customers was patently false because Chase admits to a practice of

10  applying such payments to "suspense" whenever they are unaccompanied by a specific designation by

11  the customer.  (Copeland Decl. ¶ 7.)[10]  Moreover, this misrepresentation is material and resulted in harm

12  to the Plaintiff and proposed class members.  Specifically, borrowers who made payments toward their

13  principal balance that were applied to suspense rather than to principal continued to accrue interest on an

14  artificially high principal for the period of time the payments were held in suspense.

15         The CLRA is to be liberally construed and applied to promote is underlying purposes, which are

16  to protect consumers against unfair and deceptive business practices and to provide efficient and

17  economical procedures to secure such protection.  Cal. Civ. Code § 1760; *see also Broughton v. Signa*

18  *Health Plans of Cal.,* 21 Cal. 4th 1066, 1087 (1999); *America Online, Inc. v. Super. Ct.*, 90 Cal. App.

19  4th 1, 14-15 (2001).  As Chase acknowledges, representations are actionable under the CLRA (as well

20  as the UCL) if they are "likely to deceive" a reasonable consumer.  *Freeman v. Time, Inc.*, 68 F.3d 285,

21  (footnote continued from previous page)

22  "well they have done a number of things.  They represented that they would credit my prepayment
    mortgage payments properly they have consistently failed to do that."  (Emblidge Decl., Exh. A at

23  140:9-13.)

24  [10]  Notwithstanding Chase's contention that it only applies such payments to suspense when
    they are unaccompanied by a designation, there is evidence that it applies even payments specifically
25  designated to principal to suspense.  (Johnson Decl., Ex. A.)  Although the extent to which this occurs
    has not been established through discovery, this evidence raised a genuine dispute as to a material issue
26  of fact.  (*See* Def's MPA at 4:22-27 n.4 (contending that Chase applies prepayments to principal when
    directed to do so by the borrower).)  Customers whose payments are applied to suspense by Chase
27  notwithstanding the fact that they are accompanied by a designation indicating they should be applied to
    principal are members of the putative class based upon the proposed class definition.

28

MPA IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                    C06-6510 TEH (BZ)

289 (9th Cir. 1995); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003); *Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112, 1117 (S.D. Cal. 2006). The representations at issue here, which include an explicit statement that payments made by customers beyond their regular monthly mortgage payment would be applied to principal after covering late charges and fees, clearly satisfy this standard. The representations were provided to borrowers whose loans were serviced by Chase by direct mail as a part of their monthly mortgage loan statement. Unlike statements that might be considered "puffery" or mere exaggeration, the representations are clear statements of purported fact regarding how Chase would treat a customer's payment when provided to Chase without specific designation as to how the payment should be applied. Further, the necessary consequence of Chase's failure to apply these funds to the principal balance on a mortgage loan is that interest will continue to accrue on a balance that is higher than it would be had the funds been appropriately applied. Plaintiff and other members of the proposed class have therefore suffered damages as a result of Chase's misrepresentations and its failure to adhere to its promise that the funds would be promptly applied to principal. Thus, contrary to Defendant's argument, Jefferson has standing to assert his claim under the CLRA and Chase's motion for summary judgment on this claim must fail.

### b. The Claim Under the False Advertising Act Is Based Upon the False Statements Made by Chase to Plaintiff and Other Borrowers About the Manner in Which Prepayments Will be Applied

Plaintiff's second cause of action asserts a claim for violation of California's False Advertising Act (FAA), Cal. Bus. & Prof. Code § 17500 *et seq.* As Defendant itself states, section 17500 prohibits advertising "which is untrue or misleading, or [sic] which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." (Def's MPA at 20:14-17 (citing *Searle v. Wyndham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1333 (2002)).) Advertising is untrue or misleading if members of the public are "likely to be deceived" by it. *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983). Moreover, "advertising" is interpreted broadly and may include, for example, single statements or one on one sales pitches by solicitors. *Chern v. Bank of Am.*, 15 Cal. 3d 866, 876 (1976) (single telephone misquote of interest rate constituting advertising); *Ford Dealers Ass'n v. Dep't of Motor Vehicles*, 32 Cal. 3d 347, 357 (1982) (one on one sales pitch by door to door solicitor is advertising within the meaning of Section 17500); *Feather River Trailer Sales, Inc. v.*

22

1 | *Sillas*, 96 Cal. App. 3d 234, 248 (1979) (sales pitch by car salesman to single customer constitutes

2 | advertising); *People v. Conway*, 42 Cal. App. 3d 875 (1974).

3 |        Defendants' argument in support of summary judgment on plaintiff's false advertising claim

4 | makes the same mistake as does its argument directing to the CLRA claim.  It focuses erroneously on

5 | statements made by Chase concerning its equity acceleration program.  As discussed above, however,

6 | the statements at issue are those statements representing to Jefferson and other borrowers that Chase

7 | would apply extra undesignated payments made by customers to the principal balance of the loan, after

8 | covering late charges and fees.  These representations, having been made uniformly to customers

9 | through the mortgage loan statements and attached coupons, clearly constitute advertising within the

10 | broad meaning of the FAA.  Further, because they were mailed directly to borrowers as part of their

11 | monthly mortgage loan statements and, based upon Chase's actual practice with respect to the

12 | processing of such payments were patently false, they were likely to deceive customers.  Accordingly, a

13 | cause of action for violation of Section 17500 is established and Chase's motion for summary judgment

14 | on this claim must be denied.

15 |        **c.**    **Plaintiff's UCL Claim is Not Based Upon General Principles of Fairness,**

16 |                    **but Upon Chase's Fraudulent Statements, Its Violation of the CLRA and**
                   **FAA, and Its Systematic Breach of the Mortgage Loan Contracts it**

17 |                    **Services.**

18 |        As it does with the CLRA and FAA claims, Chase treats Plaintiff's claims under the UCL

19 | without regard to the specific misrepresentations made by Chase to Plaintiff and other borrowers

20 | regarding the manner in which payments would be applied.  As noted above, those statements were

21 | clearly false, as they represented to borrowers that Chase would apply additional payments to principally

22 | whether or not they were specifically designated as such.  In addition, Chase's practice of continuing to

23 | apply Plaintiff's mid-monthly payments to "suspense" was contrary to the provisions of his Note

24 | because, beginning in January of 2005, he *did* inform Chase, *in writing* and on repeated occasions, that

25 | those payments were to be applied to principal.  (Jefferson Decl. ¶¶ 8-20 & Exs. D, G, I, K, P and S.)

26 |        Chase complains that Plaintiff has identified no law that it has violated.  At a minimum,

27 | however, Chase's misrepresentations violate the CLRA and the FAA, *i.e.* those laws on which Plaintiff's

28 | first two causes of action are based.  The "unlawful" prong of the UCL prohibits "anything that can

23

1   properly be called a business practice and that at the same time is forbidden by law." *Enreach Tech.,*

2   *Inc.,* 403 F. Supp. 2d at 977 (citing *Korea Supply Co.,* 29 Cal. 4th at 1143). The UCL statute essentially

3   "borrows" violations of other laws and treats them as independently actionable unlawful practices under

4   section 17200. *Id.*; *Farmers Ins. Exch. v. Super. Ct.,* 2 Cal. 4th 377, 383 (1992); *Cel-Tech Commc'n,*

5   *Inc.,* 20 Cal. 4th 163, 180 (1999). Thus, a violation of the CLRA is a per se violation of the UCL.

6   *Farmers Ins. Exch.,* 2 Cal. 4th at 383; *Wang v. Massey Chevrolet,* 97 Cal. App. 4th 856, 871 (2002);

7   *Mass. Mut. Life Ins. Co. v. Super. Ct.,* 97 Cal. App. 4th 1282, 1291 (2002); *Podolsky v. First Healthcare*

8   *Corp.,* 50 Cal. App. 4th 632, 649 (1996). Violations of the FAA are also violations of the UCL, based

9   both upon this general principle and the explicit language of the UCL. Cal. Bus. & Prof. Code § 17200

10   *et seq.*

11          Chase's misrepresentations also satisfy the fraudulent prong of the UCL because, as argued

12   above, they "are likely to deceive" reasonable consumers. It is well established that the "likely to

13   deceive" standard applies under the fraudulent prong of the UCL, just as it does under the CLRA and the

14   FAA. *Comm. on Children's Television,* 35 Cal. 3d at 211; *Linear Tech. Corp. v. Applied Materials,*

15   *Inc.,* 152 Cal. App. 4th 115, 134 (2007) (citing *Kasky v. Nike, Inc.* 27 Cal. 4th 939, 951 (2002)); *Prata v.*

16   *Super. Ct.* 91 Cal. App. 4th 1128, 1144 (2001); *Schnall v. Hertz Corp.,* 78 Cal. App. 4th 1144, 1167

17   (2000).

18          Finally, Chase's systematic breach of the contract with borrowers, as reflected in the Note on

19   deeds of trust, constitutes an unfair business practice under the UCC. *Smith v. Wells Fargo Bank, N.A.,*

20   135 Cal. App. 4th 1463, 1483 (2005); *Gibson,* 103 Cal. App.4th at 1302-04, 1306; *State Farm Fire &*

21   *Casualty Co. v. Super. Ct.,* 45 Cal. App. 4th 1093, 1104 (1996), *overruled on other grounds, Cel-Tech*

22   *Commc'n,* 20 Cal. 4th 163 (1999); *Orkin Exterminating Co., Inc. v. F.T.C.,* 849 F.2d 1354, 1367-68

23   (11th Cir.1988); *Allied Grape Growers v. Bronco Wine Co.,* 203 Cal. App. 3d 432, 449-53 (1988).

24          **d. The Evidence Supports Plaintiff's Claim for Conversion**

25          Defendant correctly identifies the elements of conversion as: (1) an ownership right to

26   possession of property; (2) defendant's wrongful act toward the disposition of property interfering with

27   plaintiff's possession; and (3) damage to Plaintiff. Chase's contention Plaintiff has failed to establish

28   the second of these elements, however, is mistaken. Jefferson sent regular mid-month payments to

24

1    Chase with the expectation and understanding, based upon Chase's representations, that they would be

2    applied directly to his loan, reducing his principal indebtedness on the loan.  Chase was bound by its

3    representations to credit them in that manner even if, as it contends, they were undesignated. By

4    applying those payments to suspense instead, Chase converted Plaintiff's funds to its own use and

5    benefit, and to the financial detriment of Plaintiff.

6                                    **CONCLUSION**

7        For the foregoing reasons, Jefferson respectfully requests that this Court deny Defendant's

8    motion for summary judgment in its entirety.

9

10

11   Dated:  October 1, 2007                    Respectfully Submitted,

12                                              MOSCONE, EMBLIDGE & QUADRA, LLP

13                                              THE STURDEVANT LAW FIRM
                                                A Professional Corporation

14

15                                   By: _____/s/_____
                                         Mark T. Johnson
16                                       Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

MPA IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                    C06-6510 TEH (BZ)