GEORGE G. WEICKHARDT (SBN 58586)
**ROPERS, MAJESKI, KOHN & BENTLEY PC**
201 Spear Street, Suite 1000
San Francisco, CA 94105
Telephone: (415) 543-4800
Facsimile: (415) 972-6301
Email: gweickhardt@ropers.com

Of Counsel:
LEANN PEDERSEN POPE (*Admitted Pro Hac Vice*)
ROBERT J. EMANUEL (*Admitted Pro Hac Vice*)
**BURKE, WARREN, MACKAY & SERRITELLA, P.C.**
330 North Wabash, 22nd Floor
Chicago, Illinois 60611
Telephone: (312) 840-7000
Facsimile: (312) 840-7900
Email: lpope@burkelaw.com
remanuel@burkelaw.com

Attorneys for Defendant
CHASE HOME FINANCE LLC, sued herein as
CHASE HOME FINANCE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| T.C. JEFFERSON, on behalf of himself and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHASE HOME FINANCE and DOES 1-150,<br><br>Defendants. | CASE NO. C06-6510 TEH<br><br>**CLASS ACTION**<br><br>**CHASE HOME FINANCE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: **December 10, 2007**<br>Time: **10:00 a.m.**<br>Courtroom: **12, 19th Floor**<br><br>**Judge Thelton E. Henderson** |

*Left margin, vertical text:* Ropers Majeski Kohn & Bentley — A Professional Corporation — San Francisco

450056.1

1

# TABLE OF CONTENTS

2

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 4

ARGUMENT ....................................................................................................... 7

   I.     JEFFERSON FAILS TO SUBMIT EVIDENCE TO MEET HIS
        BURDEN ON CLASS CERTIFICATION. ............................................... 7

   II.    JEFFERSON FAILS TO MEET HIS BURDEN WITH RESPECT TO
        THE RULE 23(A) REQUIREMENTS. .................................................... 9

       A.   Jefferson Fails To Meet His Burden On Numerosity. ................. 9

       B.   Jefferson Fails To Meet His Burden On Commonality And
           Typicality. .................................................................................. 10

       C.   Jefferson Fails To Meet His Burden On Adequacy. ................. 12

   III.   JEFFERSON'S CLAIMS ARE NOT APPROPRIATE FOR RULE
        23(B)(3) CLASS TREATMENT BECAUSE INDIVIDUAL ISSUES
        WILL OVERWHELM THIS CASE, PRECLUDING ANY FINDING OF
        PREDOMINANCE AND SUPERIORITY. .......................................... 13

       A.   Individual Issues Are Required To Determine Both The Claims As
           Alleged In The Complaint, As Well As Jefferson's New Theory
           Regarding The Coupon. ............................................................ 14

           1.   The claims alleged in the amended complaint and chase's
                defenses to those claims depend upon individualized
                evidence. ............................................................................ 15

           2.   There is no class-wide evidence of a misrepresentation in
                the payment coupon, and jefferson's newly invented claim
                involving the coupon also raises individual issues that
                overwhelm this case. ......................................................... 18

       B.   A Class Action Is Not Superior To Other Available Methods For
           The Fair And Efficient Adjudication Of This Case. ................. 22

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

i

**CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.   JEFFERSON'S CLAIMS ARE NOT APPROPRIATE FOR RULE 23(B)(2) CLASS TREATMENT BECAUSE JEFFERSON SEEKS PREDOMINANTLY MONETARY RELIEF AND THE INJUNCTIVE RELIEF HE SEEKS IS NOT APPROPRIATE WITH RESPECT TO THE CLASS AS A WHOLE. ....................................................................................... 22

CONCLUSION..................................................................................................25

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

ii

TABLE OF AUTHORITIES

Page

**Cases**

Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997) .................................................. 25

Arnold v. United Artist Theatre Circuit, Inc., 158 F.R.D. 439 (N.D. Cal. 1994) .......................... 24

Barnes v. Am. Tobacco Co., 161 F.3d 127 (3d Cir. 1998) ............................................ 25

Barnett v. County of Contra Costa, No. 04-4437, 2007 WL 196678
    (N.D. Cal. Jan. 24, 2007) ...................................................................... 15

Blades v. Monsanto Co., 400 F.3d 562 (8th Cir. 2005) (Cal. Ct. App. 1993) ............................ 21

Caro v. Protcer & Gamble Co., 18 Cal. App. 4th 646 ................................................. 21

Castano v. Am. Tobacco Co., 84 F.3d 734 (5th Cir. 1996) ............................................. 8

Cornn v. United Parcel Serv., Inc., No. 03-2001, 2005 WL 588431
    (N.D. Cal. March 14, 2005) .................................................................. 2, 10

Cornn v. United Parcel Serv., Inc., No. 03-2001, 2005 WL 2072091
    (N.D. Cal. Aug. 26, 2005) .............................................................. passim

Deitz v. Comcast Corp., No. 06-06352, 2007 WL 2015440
    (N.D. Cal. July 11, 2007) ..................................................................... 13

Doninger v. Pac. N.W. Bell, Inc., 564 F.2d 1304 (9th Cir. 1977) ...................................... 14

Dukes v. Wal-Mart, Inc., 474 F.3d 1214 (9th Cir. 2007) .................................... 7, 10, 17

Ellis v. Costco, 240 F.R.D. 627 (N.D. Cal. 2007) ..................................................... 8

Gartin v. S&M Nutec LLC, No. 06-2747, 2007 WL 1424654
    (C.D. Cal. April 4, 2007) .................................................................... 13

Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147 (1982) ........................................ 7, 10

Gonzalez v. Proctor & Gamble Co., No. 06-869, 2007 WL 2700954
    (S.D. Cal. Sept. 12, 2007) .............................................................. passim

Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1988) ....................................... 12, 14

Hanon v. Dataproducts Corp., 976 F.2d 497 (9th Cir. 1992)...................................... 8, 11

Hyderi v. Wash. Mut. Bank, N.A., 235 F.R.D. 390 ................................................... 21

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

ii

In re Initial Pub. Offering Sec. Litig., 471 F.3d 24 (2d Cir. 2006) .................................. 8

In re Methionine Antitrust Litig., 204 F.R.D. 161 (N.D. Cal. 2001) ............................. 22

In re Paxil Litig., 218 F.R.D. 242 (C.D. Cal. 2003) ...................................................... 23

In re Tobacco II Cases, 47 Cal. Rptr. 3d 917 (4th Dist. 2006),
   *rev. granted*, 51 Cal. Rptr. 3d 7007 (Cal. 2006) ...................................................... 16

Johnston v. HBO Film Mgmt., 265 F. 3d 178, 194 (3rd Cir. 2001) ............................. 22

Kurihara v. Best Buy Co., No. 06-01884, 2007 WL 2501698
   (N.D. Cal. Aug. 30, 2007) ........................................................................................ 18

Laster v. T-Mobile USA, Inc., 407 F. Supp. 2d 1181 (S.D. Cal. 2005) ........................ 16, 21

Lewallen v. Medtronic USA, Inc., No. 01-20395, 2002 WL 31300899
   (N.D. Cal. 2002) ....................................................................................................... 25

Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.R.D. 65 (D.N.J. 1993) ....... 12

Lozano v. AT&T Wireless Servs., Inc., Nos. 05-56466, 05-56511,
   2007 WL 2728758 (9th Cir. Sept. 20, 2007) ............................................... 14, 17, 23

Marcial v. Coronet, Ins. Co., 122 F.R.D. 529 (N.D. Ill. 1988), *aff'd* 880 F.2d 954
   (7th Cir. 1989) ............................................................................................................ 9

McDonnell-Douglas Corp. v. U.S. Dist. Court for the C.D. of Cal., 523 F.2d 1083
   (9th Cir. 1975) .......................................................................................................... 25

McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457 (2d Dist. 2006) ........................... 16

Osborne v. Subaru of Am., Inc., 198 Cal. App. 3d 646 (Cal. Ct. App. 1988) .............. 21

Pfizer Inc. v. Superior Court, 45 Cal. Rptr. 3d 840 (2nd Dist. 2006),
   *rev. granted,* 51 Cal. Rptr. 3d 707 (Cal. 2006) ....................................................... 16

Poulos v. Caesars World, Inc., 379 F.3d 654 (9th Cir. 2004) ................................... 8, 20

Simer v. Rios, 661 F.2d 655 (7th Cir. 1981) ................................................................. 21

Stickrath v. Globalstar, Inc., No. 07-1941, 2007 WL 2790727
   (N.D. Cal. Sept. 25, 2007) ........................................................................................ 16

Sueoka v. U.S., 101 Fed.Appx. 649 (9th Cir. 2004) ....................................................... 9

Sweet v. Pfizer, 232 F.R.D. 360 (C.D. Cal. 2005) .................................................... 24-25

Tierno v. Rite Aid Corp., No. 05-02520, 2006 WL 2535056
   (N.D. Cal. Aug 31, 2006) .......................................................................................... 17

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION;

Wamboldt v. Safety-Kleen Sys., Inc., No. 07-0884, 2007 WL 2409200
(N.D. Cal. Aug. 21, 2007).................................................................................................. 14

Xiufang Situ v. Leavitt, 240 F.R.D. 551 (N.D. Cal. 2007) ............................................... 11

Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180 (9th Cir. 2001)............................. 23

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 .............................................................................. passim

Cal. Bus. & Prof. Code §§ 17500 .............................................................................. passim

Cal. Civ. Code § 1770 ................................................................................................ passim

**Rules**

Fed. R. Civ. Pro. 23................................................................................................... passim

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

<u>INTRODUCTION</u>

Jefferson fails to submit the required facts demonstrating the class claims can be established through class-wide proof, which is fatal to his motion for class certification. According to the Amended Complaint, Jefferson and the putative class are all entitled by the express terms of their mortgages to make principal prepayments without penalty, and to have those payments directly applied to reduce their principal. Jefferson alleges that Chase has a "common practice" of applying all prepayments to "suspense" before applying the funds to principal, thus intentionally delaying the proper application of those funds. (Am. Comp. par. 3.) Since filing the complaint, Jefferson apparently realized that not all borrowers are entitled by their mortgage to make prepayments, and for those borrowers that are entitled to prepay, the mortgage requires them to tell Chase in writing they are making a prepayment. Thus, contrary to the theory alleged in the complaint, not everyone is entitled to have prepayments applied directly to principal. Jefferson also learned in discovery that Chase's policy is to promptly apply prepayments directly to principal, *if* the borrower is entitled to prepay and provides the contractually required designation of the funds as principal. Since there is no "common practice" of applying prepayments to suspense, and Chase's treatment of prepayment funds depends on whether the borrower is entitled to prepay, the evidence required to prove whether Chase's treatment of those funds is unlawful is inherently individual for each borrower. Thus, there are no facts in this record to support the conclusion that this case is appropriate for class treatment.

Recognizing the class claims as alleged in the Amended Complaint cannot be certified under any provision of Rule 23, Jefferson completely reinvents his case by offering new facts never before alleged in either complaint. Specifically, Jefferson now argues that there is language on his monthly payment coupon telling him to designate how any extra funds are to be applied, and that undesignated extra funds will be applied to outstanding late fees and then principal.

1

1   (Jefferson makes this claim despite the fact that none of his prepayments at issue were made with

2   the coupon, but rather through his own third-party bank's website.)  Based on the language on his

3   monthly payment coupon, Jefferson now argues that Chase misrepresented to all putative class

4   members that Chase would immediately apply any extra payments to principal, regardless of

5   whether the payments were made with the required designation, and no matter if the payment was

6   received without the coupon.  (Pl. Br., p. 1.)  Setting aside the fact that Jefferson takes the coupon

7   language entirely out of context by applying it to payments made without the coupon, neither the

8   original Complaint nor the Amended Complaint contain any facts regarding the coupon language,

9   nor did Jefferson even mention the coupon language during his deposition, despite being asked to

10  identify *any* misrepresentations made by Chase.  (Jefferson Dep., p. 135, L 1-15; p. 136, L 9-16;

11  Emanuel Decl., Ex. A.)

12

13      As a preliminary matter, because Jefferson's new theory is not alleged in his Original or

14  Amended Complaint, the Court should not consider whether that claim is suitable for class

15  treatment.  Cornn v. United Parcel Serv., Inc., No. 03-2001, 2005 WL 588431, at *10 (N.D. Cal.

16  March 14, 2005) (plaintiff's additional theory was not pled in the complaint and, therefore, "[i]t

17  would be premature to address whether class treatment is suitable") (Henderson, J.).  Jefferson's

18  motion for class certification, based on this new theory regarding misrepresentations in the

19  payment coupon, should be denied for this reason alone.[1]

20

21

22

23  _____

24  [1]  The only facts in the Amended Complaint supporting Jefferson's UCL and CLRA
    claims relate exclusively to the Note and Deed of Trust.  (See Am. Comp., paras. 3, 10.)  Also, in
25  other papers filed with this Court, Jefferson refers only to the Note and Deed of Trust as the
    source of any misrepresentations.  Specifically, in Opposition to Chase's Motion for Judgment on
26  the Pleadings, Jefferson argued that Chase represented he was entitled to make prepayments
    without penalty and that Chase would apply those payments to reduce the principal.  (Plaintiff's
27  Opposition to Motion for Judgment on the Pleadings filed April 9, 2007, pp. 2, 4.)  This argument
    is taken directly from the language of the Note, which provides:  "I may may make a full
28  prepayment or partial prepayments without paying a Prepayment charge.  The Note Holder will

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    Even if this Court considers Jefferson's reinvented theory, he still fails to satisfy any of the

2    requirements of Rule 23.  First, Jefferson's arguments regarding numerosity are speculative at

3    best: he offers no evidence of the number of potential class members, *i.e.*, borrowers who

4    received, read, and relied upon the coupon language on which he now seeks to premise his

5    claims.  Second, Jefferson fails to prove commonality because there is no common set of facts

6    establishing that all class members received and relied on the coupon language in making

7    principal prepayments.

8

9        Third, Jefferson's claims are subject to unique defenses, precluding a finding of typicality

10   and adequacy.  Jefferson testified that he relied on oral communications and letters from Chase

11   concerning the application of his payments, and there is no showing that any other putative class

12   member had similar communications with Chase.  Also, Jefferson's prepayments are placed in

13   suspense because he insists on making those payments through his own bank's website, which

14   does not allow him to designate the funds as a prepayment, as his mortgage requires.  Despite

15   being told not to send undesignated funds via his bank's website if he wants the funds to be

16   applied directly to principal, Jefferson continues to make his prepayments through his own

17   bank's website, thus inviting the very problem of which he complaints.

18

19       Fourth, Jefferson fails to submit any class-wide evidence showing his claims and those of

20   the putative class (which are each based on purported misrepresentations) could be tried on a

21   class-wide basis, thereby precluding any Rule 23(b)(3) class.  Lastly, Jefferson fails to

22   demonstrate that a Rule 23(b)(1) or (b)(2) class is appropriate, given that the relief Jefferson

23   seeks is predominantly individual and monetary, rather than injunctive.  Having failed to

24   establish any of the Rule 23 requirements, class certification should be denied.

25

26

27   use my Prepayment to reduce the amount of Principal that I owe under the Note."  (Copeland
     Decl., Ex. D, para. 4.)

28

**CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

STATEMENT OF FACTS

A.   A Borrower's Right To Make A Principal Payment Is Limited By The Terms Of Their Note And Deed of Trust.

Chase services California prime home mortgages, many of which permit borrowers to prepay principal without penalty, provided certain conditions are met.[2]  First, borrowers can make prepayments only if they have made all monthly payments due under the Note; if a borrower is delinquent, she cannot prepay principal.   (Jefferson Note, Copeland Decl., Group Ex. D.) Second, the borrower must instruct Chase *in writing* that the payment he or she is making is a prepayment, and this written instruction must be made at the time of the payment.[3]

Chase offers borrowers a variety of payment options to help them designate funds to principal.   For example, Chase provides borrowers with a monthly statement containing a detachable "coupon," which allows borrowers to indicate if they are making a prepayment. (Copeland Decl., para. 6.)  Chase also offers borrowers several other payment options that allow them to designate funds as prepayments.   For example, some borrowers make payments by

---

[2]   References throughout this brief to Chase's procedures for servicing loans relate solely to the servicing of prime loans, including Jefferson's loan.

[3]   Jefferson's Note provides as follows:

> I have the right to make prepayments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment." *When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.*

> I may make a full prepayment or partial prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note.

(See Jefferson Note, Copeland Decl., Group Ex. D, (emphasis added).)   Jefferson's loan was originated by Bay Media Federal Credit Union and sold to Freddie Mac.  (Copeland Decl., para. 13.)  Chase services Jefferson's loan for Freddie Mac.  (Id.)  Jefferson's particular note and deed of trust are written on the Fannie Mae/Freddie Mac Uniform Instrument, Form 3200 1-01 for the Note and Form 3005 1/01 for the Deed of Trust.  (Id., Ex. D.)  References to provisions of borrowers' deeds of trust and notes in this brief specifically refer to those particular forms, since Chase services California loans for other investors who may not use those forms.

arranging for Chase to debit their own bank account, or by using Chase's own website, all of which allow the borrower to designate payments as principal. (Id., para. 4.)[4]

B.     Chase's Practices For Processing Prepayments of Principal.

If a borrower's loan is current and he sends a payment to Chase with the proper designation to apply the funds to principal, those funds are applied directly to principal. (Copeland Decl., para. 8.)   On the other hand, if a borrower sends a payment to Chase with written instructions to apply to principal, but that borrower has not made all the required monthly payments, Chase does not apply those funds to prepayment since that borrower is not permitted under the mortgage to prepay principal. (Id.)  In that case, the funds are applied to the regular monthly payments, to other amounts due under the note, or to suspense, depending on the individual circumstances of that borrower's account.

Many borrowers fail to provide Chase with the required designation concerning the application of additional funds, and Chase processes these funds depending on whether the loan is current or delinquent, and the method by which the funds are received. (Copeland Decl., paras. 9-10.)  If a loan is current, and Chase receives undesignated funds with the regular mortgage payment, Chase applies the additional funds to principal, assuming no late charges or other amounts are due under the note.[5] (Id. at para.10.)  However, if Chase receives a separate partial

---

[4] Although Jefferson correctly notes that Chase allows borrowers to select from a variety of payment options (Pl. Br., p. 4), he incorrectly states that "[m]any of these payment options offer no means by which to specifically designate that a partial payment made in addition to the regular monthly payment should be applied to principal." (Id.)  Plaintiff offers no record citation to support this second assertion because it is contrary to the record. (See Copeland Dep., pp. 138, L 14-25, L 139, L1-13, Emanuel Decl. Ex. B.)

[5] The deed of trust expressly provides that any extra funds received with the regular payment "shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note." (Jefferson Deed of Trust, para. 2, Copeland Decl., Group Ex. D.)  Thus, Chase's procedure of applying additional undesignated funds to principal is consistent with the deed of trust.

CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

payment, with no instructions as to how it is to be applied, Chase applies those funds to an unapplied funds account known as "suspense." Chase then notifies the borrower in writing through a mortgage statement that the funds have been placed in suspense, and asks the borrower how they want those funds applied, i.e., to the next monthly payment, to principal, or to escrow. (Id. at para. 13.)

Chase adopted this practice of applying undesignated partial payments to suspense because many borrowers send several partial payments during the month to make up a single regular monthly payment. (Copeland Decl., para. 12.) If Chase treated all partial payments as prepayments, these borrowers may not have sufficient funds to make a regular payment at the end of the month, and may become delinquent. (Id.)

C.      Jefferson's Use Of A Third-Party Bank Website To Make Principal Prepayments.

Jefferson originally made his payments to Chase by sending a check to Chase and occasionally made extra payments of principal along with his regular payment. (Jefferson Dep., p. 50 L 9-23.) When Jefferson made his payments this way, Chase applied Jefferson's extra funds directly to principal. (Jefferson Dep., p. 50, L 14-16; p. 52, L 23-25; p. 53, L 1-5.) Jefferson later began making his regular payments electronically, through his own bank's website, and also began making additional mid-month partial payments the same way. (Id. at p. 56, L 17-22; p. 58, L 19-25; p. 59, L 4-5.) Jefferson's bank's website did not allow him to designate his mid-month partial payments as a "prepayment," and he did not tell his bank that the payments were to be treated as principal. (Id., p. 62, L 7-11; p. 64, L 23-25; p. 65, L 1-2; p. 66, L 6-20; p. 69, L 14-18; p. 70, L 1-9; p. 74, L 7-10; p. 85, L 2-3.)

Consistent with Chase's business practices for processing undesignated partial payments, Jefferson's mid-month payments were placed in "suspense." Chase sent Jefferson a monthly statement reflecting the funds were placed in suspense and requesting direction for applying those

**CHASE HOME FINANCE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

funds. (Jefferson Dep., p. 112, L 2.)  Jefferson called Chase in response to this statement, and was told his partial payments were not being applied to principal because he did not designate how payment was to be applied. (See Chase Customer Service comments at pp. 2-3 (CHF00140-141), Copeland Decl., Ex. F.)  Chase provided Jefferson with alternative methods for making prepayments that would allow the required designation, but he refused Chase's suggestions and continued to make his payments via his own bank. (Jefferson Dep., p. 124, L 17-25; p. 125, L 1-10, 19-25; p. 126, L 1-2.)  Jefferson initially contacted Chase after receiving the statements reflecting the funds in suspense, and provided the requested direction (Id., p. 108, L 10-14), but he later refused to contact Chase.  (Id., p. 108, L 16-25; p. 109, L 13-14.)  Despite Chase's repeated directions not to send additional payments of principal through his bank's website, Jefferson continues this practice. (Id. p. 98, L 14-25; p. 99, L 1-25; p. 100, L 1-17.)

## ARGUMENT

I.   JEFFERSON FAILS TO SUBMIT EVIDENCE TO MEET HIS BURDEN ON CLASS CERTIFICATION.

"The party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met." Dukes v. Wal-Mart, Inc., 474 F.3d 1214, 1224 (9th Cir. 2007).  A court, in turn, conducts a "rigorous analysis" to determine whether the plaintiff has met his burden with respect to each element of Rule 23. Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982); Cornn v. United Parcel Service, No. 03-2001, 2005 WL 2072091, at *2 (N.D. Cal. Aug 26, 2005).  In conducting this "rigorous analysis," a court does not decide the merits of the case; however, the court

> must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.' See MANUAL FOR COMPLEX LITIGATION § 30.11 (3d ed. 1995). * * *  Absent knowledge of how [the individual case] would actually be tried [] it [i]s impossible for the court to know whether the common issues would be a 'significant' portion of the individual trials.

1    Castano v. Am. Tobacco Co., 84 F.3d 734, 744-45 (5th Cir. 1996).  The court is "at liberty to

2    consider evidence which goes to the requirements of Rule 23 even though the evidence may also

3    relate to the underlying merits of the case."  Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th

4    Cir. 1992) (internal citations and quotations omitted); Cornn, 2005 WL 2072091, at *2 (court may

5    "consider evidence that relates to the merits if such evidence also goes to the requirements of

6    Rule 23"); Ellis v. Costco, 240 F.R.D. 627, 635 (N.D. Cal. 2007) ("[T]he court may properly

7    consider the merits to the extent that they overlap with class certification issues.") (citing In re

8    Initial Pub. Offering Sec. Litig., 471 F.3d 24 (2d Cir. 2006)).

9          Thus, to determine whether Jefferson has satisfied his burden of proving each requirement

10   of Rule 23, this Court must examine the record evidence, and not be guided by the

11   unsubstantiated allegations in the complaint or the motion for class certification.  Only by looking

12   to the record evidence, as well as the elements of the claims and defenses asserted, can this Court

13   determine whether a recovery by Jefferson would establish grounds for the putative class to

14   recover.  E.g., Poulos v. Caesars World, Inc., 379 F.3d 654 (9th Cir. 2004) (analyzing elements of

15   claims and defenses, evidence necessary to prove those claims and defenses, and relying on

16   record evidence to affirm denial of class certification).

17         Here, Jefferson concludes that he meets the prerequisites of Rule 23(a), as well as the

18   requirements of all three subsections of Rule 23(b), by merely restating the requirements for class

19   certification and making unsupported conclusory statements that those requirements are satisfied.

20   As discussed below, Jefferson's failure to conduct the proper analysis of his claims and to submit

21   the evidence necessary to establish that his claims are appropriate for class treatment is fatal to his

22   motion for class certification.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

II.   JEFFERSON FAILS TO MEET HIS BURDEN WITH RESPECT TO THE RULE 23(A)
      REQUIREMENTS.

In order to maintain a class action under federal law, Jefferson must meet his burden with respect to each of the four threshold requirements to class status, commonly known as "numerosity," "commonality," "typicality," and "adequacy."   Fed. R. Civ. P. 23(a)(1)-(4). Jefferson fails to meet his burden with respect to each of these requirements.

A.   Jefferson Fails To Meet His Burden On Numerosity.

Numerosity requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  When money damages are sought, as in this case, "mere conclusory allegations as to the estimated class size are insufficient for plaintiff's burden of proof."  Sueoka v. U.S., 101 Fed.Appx. 649, 653 (9th Cir. 2004).  Here, Jefferson sets forth an overly broad class definition – all persons whose prepayments of principal were placed in suspense – and then concludes that Chase's representations regarding the number of prepayments placed in suspense establishes numerosity for class certification purposes. (Pl. Br., pp. 1-2, 7.)

Jefferson's reliance solely on information provided by Chase is misplaced given that Jefferson's claims are premised not just on funds being placed in suspense, but also on purported misrepresentations being made to borrowers regarding the application of undesignated funds. Jefferson has not submitted any evidence that any other borrower would have received the same oral and written communications upon which Jefferson's claims were originally based.  Nor has Jefferson submitted evidence that any other borrower would have received, misinterpreted and relied on the payment coupon Jefferson references for the first time in his class certification motion.  Accordingly, Jefferson's conclusory and speculative argument does not meet his burden on the numerosity requirement.  See Marcial v. Coronet, Ins. Co., 122 F.R.D. 529, 531 (N.D. Ill. 1988), aff'd, 880 F.2d 954 (7th Cir. 1989) (speculative application of data untethered to theory of case did not meet burden on numerosity).

9

B.     Jefferson Fails To Meet His Burden On Commonality and Typicality.

While the "commonality and typicality requirements of Rule 23(a) tend to merge," Falcon, 457 U.S. at 157, n. 13, "each factor serves a discrete purpose," Dukes, 474 F.3d at 1232, n.10.  As set forth in Dukes, "[c]ommonality examines the relationship of facts and legal issues common to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives."  474 F.3d at 1232, n.10.

As with the other requirements for class certification, a plaintiff cannot simply reiterate the standards for commonality and typicality and conclude that they are met (See Cornn, 2005 WL 588431, at *6 ("simply repeating the language of the rules in [class certification] papers is insufficient")), yet that is what Jefferson does here.  Jefferson concludes that commonality and typicality requirements are met because the claims of the putative class members are "all grounded on a common set of alleged facts," (Pl. Br., p. 9), and Jefferson and the putative class are subject to the "same alleged unlawful practice of course of conduct."  (Id., p. 12.)  In drawing these conclusions, Jefferson presents no evidence supporting these conclusory allegations of a "common set of facts" (commonality) or that Jefferson and the putative class are subject to the same "unlawful practice" (typicality).   In fact, the evidence Chase submits proves just the opposite, thereby precluding class certification.

First, as to the commonality requirement, there is no evidence of a "common set of facts" whereby all putative class members received the same "misrepresentation" in the form of the payment coupon.  Jefferson bases his new misrepresentation theory on certain language in the payment coupon he received from Chase, but Chase submits evidence that not all borrowers receive the same payment coupon as Jefferson. (Copeland Decl., para. 7.)  Moreover, because Jefferson takes the coupon language entirely out of context by applying it to all undesignated payments – and not just those payments made with the coupon – there are no common set of

10

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

facts establishing that all borrowers likewise misinterpreted the coupon language in the same fashion as Jefferson.  See Hanon, 976 F.2d at 508-09 (unique defenses preclude certification).

Second, there is no evidence of the "same alleged unlawful practice" that Jefferson claims exists to support the typicality requirement.[6]  Specifically, Jefferson alleges that Chase engages in an "unlawful practice of not promptly applying prepayment to customer accounts," and instead places prepayments in a suspense account.  (Am. Comp., para. 15.)  Contrary to these unsupported allegations, the evidence shows that Chase's procedure for processing principal prepayments varies depending on the status of the borrower's loan and the method of payment, and is entirely consistent with the mortgage.  For example:

- If the loan is current and the borrower advises Chase she is making a prepayment, as the mortgage requires, Chase applies the payment directly to principal. (Copeland Decl., para. 8.)

- If the loan is current and the borrower includes extra undesignated funds with her regular payment, those funds are applied to principal, after paying any outstanding late charges, as the mortgage expressly allows.  (Id.)

- If the borrower is delinquent and attempts to make a prepayment, Chase does not apply the payment as directed because borrowers who have not made all the required monthly payments have no right to prepay principal.  (Id., Group Ex. D, para. 4; "I may not designate a payment as a prepayment if I have not made all monthly payments due under the note.")

- If a borrower's loan is current and Chase receives a partial payment without the contractually required direction for applying those funds to principal, Chase applies the funds to suspense and requests direction from the borrower as to how the funds should be applied.  (Id., Group Ex. D, para. 4.)

---

[6]  In Xiufang Situ v. Leavitt, this Court held that the plaintiff was not required to show evidence of a common practice because plaintiff's claim was premised on defendant's failure to implement a practice or policy that satisfied certain obligations of the defendant in a prescription drug program.  240 F.R.D. 551, 560-61 (N.D. Cal. 2007) (Henderson, J.).  In other words, the common factual issue was a failure to act that impacted the putative class members.  When, as here, a claim is premised on an alleged affirmative practice, and not any failure to act, this Court has held that the party seeking certification must present class-wide evidence of the alleged practice.  See Cornn, 2005 WL 2072091, at *2 (plaintiff must "present sufficient evidence of a class-wide practice that gives rise to liability.").

**CHASE HOME FINANCE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Ropers Majeski Kohn & Bentley

A Professional Corporation

San Francisco

Thus, contrary to Jefferson's unsupported argument that all putative class members are "subject to the same Chase practices," there is no evidence of a common practice whereby Chase applies prepayments to suspense when the borrower satisfies the mortgage's conditions for making a prepayment.

Given the lack of evidence of any common factual issues, the only similarity remaining between Jefferson and a putative class is their assertion of the same causes of action. Assertion of the same of causes of action, however, does not itself establish any common legal issues, or typicality of claims. E.g., Gonzalez v. Protcor & Gamble Co., No. 06-869, 2007 WL 2700954, at *4 (S.D. Cal. Sept. 12, 2007) (plaintiff alleging UCL, FAL and CLRA claims was not typical of putative class alleging same causes of action due to the existence of unique defenses); Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.R.D. 65, 74 (D.N.J. 1993) ("simply alleging the same theory of recovery for all class members does not guarantee the existence of legal or factual commonality.")

## C.   Jefferson Fails To Meet His Burden On Adequacy.

Jefferson must also show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy of the class is necessary to "satisfy constitutional due process concerns [that] absent class members [are] afforded adequate representation before entry of a judgment which binds them." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1988). There are two criteria for determining adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." Id. at 1021.

As with the other Rule 23 requirements, Jefferson simply concludes that he has established adequacy because both he and the putative class have an interest in challenging

12   CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   "Chase's loan processing practices." (Pl. Br., p. 13.) Jefferson's proof of the adequacy

2   requirement depends again upon the existence of the alleged Chase practice upon which he bases

3   his claims. (Id.) As demonstrated herein, there is no evidence that the practice as alleged by

4   Jefferson exists. See supra, Section II.B.

5

6   Jefferson is also not adequate because his claims are subject to unique defenses. With

7   respect to his new misrepresentation claims, the adjudication of Jefferson's claims will depend on

8   individualized factual issues pertaining to, among other things, the nature of the Chase

9   representation, whether it was material, whether Jefferson relied on the representation and

10  whether Jefferson was damaged as a result. See supra, Section II.B. and infra, Section III.A.

11  When a proposed class representative's claims are subject to unique defenses, that person is not

12  an adequate representative of the class. See Deitz v. Comcast Corp., No. 06-06352, 2007 WL

13  2015440, *5 (N.D. Cal. July 11, 2007) ("Adequacy of representation may be defeated when

14  litigation of the matter could be overwhelmed by disposition of unique defenses * * * [and]

15  differences in proof of reliance . . . may render a representative inadequate.") (internal citations

16  and quotations omitted). Accordingly, Jefferson fails to meet his burden on the adequacy

17  requirement. e.g., id. ("Because unique reliance issues will arise, plaintiff has not met his burden

18  of proving that he is an adequate representative."); Gartin v. S&M NuTec LLC, No. CV06-2747

19  – F.R.D. 2007 WL 1424654, at * 3 (C.D. Cal. Apr. 4, 2007) (where plaintiff and putative class

20  members may have relied on different representations, named plaintiff is not adequate to

21  represent putative class).

22

23  III.    JEFFERSON'S CLAIMS ARE NOT APPROPRIATE FOR RULE 23(B)(3) CLASS
            TREATMENT BECAUSE INDIVIDUAL ISSUES WILL OVERWHELM THIS CASE,
24          PRECLUDING ANY FINDING OF PREDOMINANCE AND SUPERIORITY.

25  Rule 23(b)(3) requires courts to analyze whether the party seeking certification has

26  established that "questions of law or fact common to the members of the class predominate over

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

**CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

any questions affecting only individual members [predominance], and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).   In order to establish predominance and superiority, Jefferson must submit *evidence* demonstrating that each cause of action for which he seeks certification can be tried on a class-wide basis. See Cornn, 2005 WL 2072091, *2 ("party seeking certification must provide facts to satisfy [Rule 23] requirements") (citing Doninger v. Pac. N.W. Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977).

>A.    Issues Are Required To Determine Both The Claims As Alleged In The Complaint, As Well As Jefferson's New Theory Regarding The Coupon.

To establish predominance, the moving party must show that "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." Hanlon, 150 F.3d at 1022.   As Jefferson notes, in conducting a predominance analysis, "the court first identifies the substantive issues raised by the cause of action and the applicable defenses [and] [i]t then inquires into the proof relevant for each issue." (Pl. Br., p. 17 (quoting Wamboldt v. Safety-Kleen Sys., Inc., No. 07-0884, 2007 WL 2409200, at *13 (N.D. Cal. Aug. 21, 2007).) See also Lozano v. AT&T Wireless Servs., Inc., No 05-56466, 05-56511 F.d, 2007 WL 2728758, *14 (9th Cir. Sept. 20, 2007) (separate predominance analysis appropriate for each cause of action).

Despite Jefferson's recognition of his obligation to analyze each cause of action for which he seeks certification, as well as the proof relevant to this Court's determination of each claim, Jefferson fails to make the required analysis and instead simply concludes that his claims "can be litigated to conclusion without having to take into account any differences that might exist in the characteristics or circumstances of individual class members." (Pl. Br., p. 17.) Jefferson further concludes that his claims "stem from an alleged common practice or course of conduct" such that "it is difficult to identify any significant individual issues in this case." (Id.) The "common

14

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

practice or course of conduct" is identified as making "an identical or substantially similar representation" to all class members through monthly loan statements that additional payments would be applied toward principal, after payment of any outstanding late fees. (Pl. Br., p. 17.) Jefferson's sole support for this claim is the Chase deposition testimony establishing that Chase sends mortgage statements to borrowers, at least monthly. (Pl. Br., p. 3.) Jefferson's failure to provide the required analysis of his claims and the evidence necessary to prove those claims underscores the fact that individual issues overwhelm this case, as discussed below.

1. The claims alleged in the Amended Complaint and Chase's defenses to those claims depend upon individualized evidence.

In the Amended Complaint, Jefferson asserts causes of action for purported violations of Sections 17200 of the UCL and 17500 of California's False Advertising Law (the "FAL"), as well as causes of action for a purported violation of the CLRA and conversion. With respect to the UCL claim, Jefferson must prove (i) the existence of an unlawful, unfair or fraudulent business act or practice[7] by Chase that (ii) Jefferson relied on which (iii) caused Jefferson actual injury of either lost money or property. Cal. Bus. & Prof. Code §§ 17200, 17204, as amended by Prop. 64, § 3, approved Nov. 2, 2004. Similarly, with respect to the FAL claim, Jefferson must prove (i) the existence of a statement, which was known or should have been known by Chase to be untrue or misleading that (ii) Jefferson relied on which (iii) subsequently caused Jefferson actual injury. Cal. Bus. & Prof. Code §§ 17500, 17535, as amended by Prop. 64, § 5, approved Nov. 2, 2004. Because Proposition 64 amended both the UCL and FAL to allow recovery only when injury is

---

[7] Even though Jefferson fails to address the specific claims for which he is seeking class certification, Chase assumes that, at most, Jefferson seeks to certify a class with respect to the unlawful and/or fraudulent prongs of the UCL, but not the unfairness prong given that in response to Chase's motion for summary judgment, Jefferson denied that his UCL claim was based on "general principles of fairness." (See Pl. Br. in Resp. to Chase Mt. for Summ. Judgment, p. 23.) See Barnett v. County of Contra Costa, No. 04-4437, 2007 WL 196678, *3 (N.D. Cal. Jan. 24, 2007) (Henderson, J.) ("Statements in briefs can be treated as judicial admissions that bind a party.")

CHASE HOME FINANCE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

"as a result of" a violation of the UCL and the FAL, both provisions contain actual reliance and causation requirements.[8] See Laster v. T-Mobile USA, Inc., 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (Proposition 64's "as a result of" language adds causation and reliance requirements to UCL and FAL claims); see also Stickrath v. Globalstar, Inc., No. 07-1941, 2007 WL 2790727, *2 (N.D. Cal. Sept. 25, 2007) (Henderson, J.) (UCL contains causation requirement).

In order to establish a violation of the CLRA, Jefferson must prove that Chase engaged in one of the enumerated activities in § 1770[9] in connection with "a transaction intended to result or which result[ed] in the sale or lease of goods or services" to Jefferson. Cal. Civ. Code § 1770. Again, Jefferson must establish he suffered damage as a result of any purported misrepresentations by Chase, i.e., Jefferson must establish causation via reliance on the statements. Stickrath, 2007 WL 2790727, *2 (CLRA contains causation requirement); Gonzalez, 2007 WL 2700954, at *7 (reliance an element of CLRA claim based on allegedly false advertising). Lastly, regarding the conversion claim, Jefferson must prove (i) an ownership right to possession of property; (ii) Chase's committed some wrongful act toward the disposition of property interfering with Jefferson's possession; and (iii) damage to Jefferson. McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1491 (2d Dist. 2006).

Understanding the elements of these causes of action, Jefferson must show that the evidence he will rely on to support his claims (and that Chase will submit in defense of the claims) is same evidence that would be submitted in support and defense of the putative class

---

[8] The issue of whether actual reliance is an element of the UCL and the FAL as a result of Proposition 64 is currently pending before the California Supreme Court in Pfizer Inc. v. Superior Court, 45 Cal. Rptr. 3d 840 (2nd Dist. 2006), rev. granted, 51 Cal. Rptr. 3d 707 (Cal. 2006) and In re Tobacco II Cases, 47 Cal. Rptr. 3d 917 (4th Dist. 2006), rev. granted, 51 Cal. Rptr. 3d 707 (Cal. 2006).

[9] Jefferson alleges Chase violated §§ 1770(a)(2), 1770(a)(5), 1770(a)(9) and 1770(a)(14), each of which prohibits certain representations or advertisements.

CHASE HOME FINANCE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

claims.  See Dukes, 474 F.3d at 1225 (class-wide evidence existed where plaintiff provided "significant proof of a corporate policy of discrimination"); Tierno v. Rite Aid Corp., No. 05-02520, 2006 WL 2535056, *5-10 (N.D. Cal. Aug. 31, 2006) (Henderson, J.) (analyzing evidence to determine whether it is individualized or class-wide proof).  If the evidence varies for Jefferson and the putative class members, then the issues to which the evidence speaks are individual issues that cannot be resolved on a class-wide basis.  E.g., Lozano, 2007 WL 2728758, *14 (no predominance of common issues regarding CLRA claim that required "individualized analysis of awareness and knowledge" of defendant's practices); Cornn, 2005 WL 2072091, at *5 (class certification denied where "individualized inquiries [] predominate over any common questions").

The record evidence establishes that there is no common practice of applying prepayments to suspense accounts as alleged in the Amended Complaint.  The record also establishes that Chase's treatment of funds intended by the borrower to be applied to prepayment of principal depends on whether the borrower is entitled by their mortgage to prepay, as well as the manner in which the payment is made.  Consequently, proof of each class member's claim that Chase failed to apply their payment to principal will require resolution of numerous individual issues, including: (1) whether the borrower was current or delinquent on their loan at the time of each attempted prepayment; (2) whether the borrower designated in writing at the time of payment that he or she intended that Chase apply the funds to principal; (3) if the borrower was current on their loan and made a separate partial payment, but did not designate in writing that the funds were prepayments, whether Chase applied the payment to principal after receiving the required direction from the borrower; (4) if the borrower was current on their loan and included extra undesignated funds with their regular mortgage payment, whether Chase applied those extra funds as required by their note and deed of trust; (5) whether Chase made any misrepresentations to the borrower regarding the application of prepayments, and if so (6) whether any of the alleged

CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

misrepresentations were material misrepresentations; (7) whether the borrower relied on any such material misrepresentations; and (8) whether the borrower took action in reliance on such material misrepresentations that caused injury.

Given the numerous individual inquiries required to determine Jefferson's claims and the claims of the putative class, predominance is not satisfied. <u>See</u> <u>Cornn</u>, 2005 WL 2072091, at *2 ("Plaintiffs have failed to present sufficient evidence of a class-wide practice that gives rise to liability."); <u>Kurihara v. Best Buy Co.</u>, No. 06-01884, 2007 WL 2501698, * 9 (N.D. Cal. Aug. 30 2007) ("Where a plaintiff fails to 'present sufficient evidence of a class-wide that gives rise to liability,' class certification is unavailable.") (quoting <u>Cornn</u>).

       2.    There is no class-wide evidence of a misrepresentation in the payment coupon, and Jefferson's newly invented claim involving the coupon also <u>raises individual issues that overwhelm this case.</u>

In an effort to overcome the clear bar to class certification based on Jefferson's theory alleged in the Amended Complaint, he now argues that Chase uniformly represents to borrowers that undesignated payments will always and/or immediately be applied to principal. (Pl. Br., p. 3.) Jefferson then concludes that this alleged representation precludes Chase from ever putting undesignated funds in a suspense account. (<u>Id.</u>)

However, there is no evidence that Chase routinely tells borrowers that any undesignated funds will always and/or immediately be applied to principal. While Jefferson submits his payment as evidence of this alleged Chase practice, the payment coupon does not provide that all undesignated funds, sent without or without the coupon, will always and/or immediately be applied to principal. Rather, the payment coupon informed Jefferson that if and when he used the payment coupon to send money to Chase, he should "designate how [he] want[s] to apply any additional funds. Undesignated funds first pay outstanding late charges and fees, then principal." (Pl. Br., p. 3 (quoting payment coupon).) The payment coupon does address how and when

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

18

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   monies sent to Chase outside of the context of the payment coupon will be applied.   (See

2   Jefferson Decl., Ex. B.)

3        Not only does Jefferson fail to submit any evidence of the class-wide practice upon which

4   his newly invented claim is based, he fails to acknowledge the plethora of individualized

5   inquiries relevant to that claim.   The crux of Jefferson's latest theory regarding the payment

6   coupon is that Chase made purported misrepresentations to him, which caused him to believe

7   that undesignated payments will always and/or immediately be applied to principal.   However, in

8   discovery and in his declaration submitted in support of his motion for class certification,

9   Jefferson testifies that misrepresentations occurred during certain oral and written

10  communications he had with Chase personnel.[10]   (Jefferson Decl., para. 6.)   Jefferson's

11  declaration does reference payment coupons he received from Chase, but he never states he

12  relied on those coupons in sending unidentified prepayments to Chase.   (Id.)   In his class

13  certification papers, Jefferson strategically ignores his own testimony regarding his individual

14  communications with Chase, and instead argues for the first time that the payment coupons he

15  received from Chase form the basis for class relief, again without arguing that he relied on the

16  payment coupons. (Pl. Br., pp. 3, 12, n.3.) Regardless of whether Jefferson sticks with his initial

17  testimony or suddenly changes his testimony to argue he relied on the payment coupon,

18  individual issues regarding misrepresentations, materiality, reliance and causation overwhelm

19  this case.

20       As an initial matter, there is no basis to assume that Chase made the same representations

21  to all of the putative class members.   The oral and written communications between Jefferson

22  and Chase customer service representatives are inherently individual (Jefferson Decl., paras. 4 –

---

[10]   Jefferson also testified that he received letters from Chase regarding the equity accelerator program, but acknowledged that he never relied on those statements nor took part in the program. (Jefferson Dep., p. 135 L1-21.)

19       **CHASE HOME FINANCE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   11), and there is no evidence in the record that any other putative class member received the

2   same oral and written communications from Chase.  See Gonzalez, 2007 WL 2700954, at *6

3   ("plaintiffs failed to show that the same representation was made to each class member").

4   Perhaps recognizing this deficiency in his theory, Jefferson argues that the payment coupon

5   constitutes a representation from Chase that all putative class members would have received,[11]

6
    but he offers no evidence to support this conclusion.  (Pl. Br., p. 3.)  In fact, the payment coupons
7
    vary depending on the status of the borrower's loan (i.e., bankruptcy), or the payment method the
8
    borrower chooses.  For example, monthly coupons sent to borrowers in Chase's Pre-Authorized
9
    Instant Deduction program receive monthly statements with payment coupons that do not contain
10
    the language Jefferson now relies on for class certification.  (Copeland Decl., para. 7, Ex. B.)
11

12          Individual inquires are also required to adjudicate issues of materiality, reliance and

13   causation with respect to Jefferson and every single class member.  E.g., Laster, 407 F. Supp. 2d

14   at 1194 ("Proposition 64[] makes clear that a showing of causation is required as to each

15   representative plaintiff.");  Gonzalez, 2007 WL 2700954, at *8 (stating that "all absent class

16   members must" show "individualized reliance," and denying certification of UCL and FAL

17   claims).  This individual inquiry is illustrated by looking to Jefferson's individual evidence.

18   Jefferson testified that Chase made misrepresentations to him during telephone calls and in

19   letters, and he never mentioned the payment coupon.  (Jefferson Decl., paras. 4-11.)  Certainly,

20   Jefferson has not argued, and still does not argue, that he ever relied on the payment coupon as

21

22

23   _____

24   [11]  By referencing the payment coupon for the first time at the class certification stage,
    Jefferson may be trying to argue that reliance on the coupons could be inferred on a class-wide
25   basis.  However, the Ninth Circuit held that "a presumption of reliance typically has been applied
    in cases involving securities fraud and, even then, the presumption applies only in cases primarily
26   involving a 'failure to disclose' – that is, cases based on omissions as opposed to affirmative
    misrepresentations."  Poulos, 379 F.3d at 666; see also Gonzalez, 2007 WL 2700954, at *7-9
27   (citing Poulos and rejecting presumption of reliance in UCL, FAL and CLRA claims based on
    misrepresentation).
28

                    20          CHASE HOME FINANCE LLC'S MEMORANDUM OF
                                POINTS AND AUTHORITIES IN OPPOSITION TO
                                PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

his basis for believing that undesignated funds sent separately from his regularly monthly payment would be immediately applied as principal. (Jefferson Decl., para. 3.)

Consequently, to the extent Jefferson's misrepresentation claims are allowed to proceed, individual inquiries with respect to materiality of, reliance on, and causation of injury resulting from any purported misrepresentation – whether it be individual communications with a borrower, or the payment coupon – exist with respect to Jefferson. E.g., Osborne v. Subaru of America, Inc., 198 Cal. App. 3d 646, 661 (Cal. Ct. App. 1988) (pre-Proposition 64 case holding that where deposition evidence demonstrated plaintiffs never saw advertisements alleged to be misrepresentations, there could be no class evidence of reliance). The same individual inquires will exists with respect to each member of the putative class. E.g., Caro v. Protcer & Gamble Co., 18 Cal. App. 4th 646, 668 (Cal. Ct. App. 1993) (pre-Proposition 64 case holding that court must conduct individualized inquiry as to whether orange juice label misled any putative class member).

Given the plethora of individualized inquiries in this case, and the lack of any class-wide evidence on any issue, Jefferson cannot meet his burden on predominance on either the theory alleged in the complaint or his new theory relating to payment coupons. See id.; Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981) (common issues did not predominate where substantive elements of claims would require consideration of each individual claim); Blades v. Monsanto Co., 400 F.3d 562, 569-71 (8th Cir. 2005) (no predominance where named plaintiff could not prove class-wide injury with proof common to class); Hyderi v. Wash. Mut. Bank, N.A., 235 F.R.D. 390, 402 (where there are "substantial individualized proceedings to resolve the class members' claims – precedent supports denial of class certification").

Ropers Majeski Kohn & Bentley

A Professional Corporation

San Francisco

21

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

**B.    A Class Action Is Not Superior To Other Available Methods For The Fair And Efficient Adjudication Of This Case.**

Jefferson must also prove the superiority requirement, which means that he must establish that a class action is the best method "for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b)(3). In addressing the superiority requirement, courts consider, <u>inter alia</u>, "the difficulties likely to be encountered in the management of a class action." <u>Id.</u> Here, the difficulties with managing this litigation as a class action demonstrate that class certification is not the superior method for adjudicating the claims of Jefferson and the putative class.

Specifically, this Court will encounter difficulties in the management of this case as a class action due to the existence of individual issues. <u>See</u> <u>supra</u> Section III.A. In fact, given that there are only individual inquiries (and no evidence of any common Chase practice), this case will undoubtedly degrade into "mini-trials examining the particular circumstances of each class member." <u>In re Methionine Antitrust Litig.</u>, 204 F.R.D. 161, 165 (N.D. Cal. 2001); <u>see also Johnston v. HBO Film Mgmt.</u>, 265 F.3d 178, 194 (3rd Cir. 2001) (trial of a case with individualized issues "would present severe manageability problems for the court"). Given the manageability problems with certifying a class, the superiority requirement is not satisfied, and this Court should deny class certification. <u>Id.</u>

**IV.    JEFFERSON'S CLAIMS ARE NOT APPROPRIATE FOR RULE 23(B)(2) CLASS TREATMENT BECAUSE JEFFERSON SEEKS PREDOMINANTLY MONETARY RELIEF AND THE INJUNCTIVE RELIEF HE SEEKS IS NOT APPROPRIATE WITH RESPECT TO THE CLASS AS A WHOLE.**

Certification under Rule 23(b)(2) should be denied because the relief Jefferson seeks is predominately individual and monetary.[12] Certification under Rule 23(b)(2) is appropriate only

---

[12]   Rule 23(b)(2) provides that certification may be appropriate "if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

CHASE HOME FINANCE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    when the primary relief sought is injunctive; monetary relief predominates unless it is "merely

2    incidental" to any injunctive relief.  Lozano, 2007 WL 2728758, at *8 (concluding plaintiff

3    sought primarily monetary relief and affirming denial of Rule 23(b)(2) certification of CLRA and

4    UCL claims); Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1195-96 (9th Cir. 2001)

5    (affirming denial of Rule 23(b)(2) class where relief sought was primarily monetary; complaint

6    sought to establish a reserve fund for medical monitoring, compensation for future medical

7    treatment, as well as compensatory and punitive damages); In re Paxil Litig., 218 F.R.D. 242, 248

8    (C.D. Cal. 2003) (denying Rule 23(b)(2) class where action was aimed primarily at obtaining

9    monetary relief; value of the injunctive relief sought was dwarfed by value of monetary damages

10   requested).   There is no "bright line test" for determining whether the relief sought is primarily

11   monetary or injunctive. Instead, the Court should look to the language of Rule 23(b)(2) in light of

12   the individual circumstances presented in the case, as well as Plaintiff's intent in bringing the suit

13   so as to determine whether the claim for injunctive relief predominates. Zinser, 253 F.3d at 1196.

14

15

16   Here, Jefferson's argument that his intent or "primary purpose" in bringing this action is to

17   obtain injunctive relief (Pl. Br., p. 16) is belied by his Complaint.  For example, in paragraphs 1

18   through 7 of his prayer for relief, Jefferson seeks compensatory damages, attorneys' fees and

19   costs, interest, punitive and exemplary damages, as well as special and treble damages (see

20   Complaint, p. 11, Section VI, paras. 1-7), and only in the final paragraph does Jefferson ask for

21   "appropriate injunctive and other relief."  (Id., para. 8.)  Given the nature of the claims and the

22   prayer for relief, damages can not be characterized as "merely incidental" or secondary to

23   injunctive relief.

24

25   Noting that Rule 23(b)(2) was designed to accommodate civil rights cases, a number of

26   courts have refused to certify a class where, as here, the claims are predominately monetary in

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

**CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

nature.[13] For example, in Gonzalez, supra, plaintiff brought UCL claims based on alleged misrepresentations made in connection with a hair product. 2007 WL 2700954, *1. The court denied certification under Rule 23(b)(2) because plaintiff failed to establish her "primary goal" was to obtain injunctive relief. Id. at *9. The Gonzalez court noted that although the prayer for relief sought to enjoin defendant from marketing the hair product at issue, the complaint repeatedly requested monetary relief, including punitive damages. Id. In denying certification of a class under Rule 23(b)(2), the court distinguished plaintiff's claims under the UCL from civil rights cases certified under (b)(2), stating "logic supports the conclusion that a suit by current and former employees seeking to end the employers practice of gender discrimination would be primarily motivated by the desire to protect class members that are suffering as they once did." Id. See also Arnold v. United Artist Theatre Circuit, Inc., 158 F.R.D. 439, 452 (N.D. Cal. 1994) (Henderson, J.) ("[t]he Federal Rules Advisory Committee that drafted the amendments that added subpart (b)(2) to Rule 23 cited civil rights cases as the chief category of action for which the (b)(2) category was created.").

Certification should be also denied under Rule 23(b)(2) because the injunctive relief Jefferson seeks is not appropriate with respect "to the class as a whole." See Fed R. Civ. P. 23(b)(2). Some class members (e.g., borrowers that have failed to make all required monthly payments) are not entitled to make prepayments, so they are not entitled to injunctive relief requiring Chase to apply their payment to principal. Because injunctive relief is not appropriate with respect to the "class as a whole," this Court should deny Rule 23(b)(2) certification. [14, 15]

---

[13] Not surprisingly, Jefferson relies heavily on civil rights cases in support of his argument for certification of a Rule 23(b)(2) class here. (See, e.g., Pl. Br., pp. 15-16.)

[14] Certification should also be denied under Rule 23(b)(2) because the putative class is not "cohesiveness" due to individual issues. See Sweet v. Pfizer, 232 F.R.D. 360, 374 (C.D. Cal. 2005) (denying certification under Rule 23(b)(2) due to predominance of individual issues,

CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

CONCLUSION

For each of the reasons set forth above, Chase Home Finance LLC respectfully requests that this Court deny Plaintiff T.C. Jefferson's Motion for Class Certification.

Dated: October 29, 2007                    BURKE, WARREN, MACKAY & SERRITELLA, P.C.

By:            /s/ LeAnn Pedersen Pope
                     LeAnn Pedersen Pope
                     Attorney for Defendant
              CHASE HOME FINANCE LLC, sued herein
                  as CHASE HOME FINANCE

451072.2

---

stating: "even though Rule 23(b)(2), unlike Rule 23(b)(3), does not specifically contain predominance and superiority requirements, a class under Rule 23(b)(2) must not be overrun with individual issues"); Lewallen v. Medtronic USA, Inc., No. 01-20395, 2002 WL 31300899, at *3 (N.D. Cal. 2002) (denying certification under Rule 23(b)(2) where individual issues predominated over common questions and, thus, the cohesiveness requirement was not satisfied), citing Barnes v. Am. Tobacco Co., 161 F.3d 127, 142-43 (3d Cir. 1998) (affirming denial of 23(b)(2) certification, stating "While 23(b)(2) class actions have no predominance or superiority requirements, it is well established that class claims must be cohesive.").

[15]   Jefferson also fails to demonstrate that he is entitled to represent a Rule 23(b)(1)(A) class, which depends upon a showing that individual adjudications of the putative class members' claims "would risk establishing 'incompatible standards of conduct for the party opposing the class.'" Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997) (quoting Fed. R. Civ. P. 23(b)(1)(A)). Instead, Jefferson simply concludes that Chase is required to change its "practices and automated systems in such a way as to apply to all class members." (Pl. Br., p. 14.) Again, Jefferson's argument depends upon the unsupported conclusion that there is some class-wide practice at issue here. See supra, Section II.B. Given the lack of class-wide evidence, Jefferson cannot show that Chase could be subject to "incompatible standards of conduct." See McDonnell-Douglas Corp. v. U.S. Dist. Court for the C.D. of Cal., 523 F.2d 1083, 1086 (9th Cir. 1975) (denying class certification).

CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco