GEORGE G. WEICKHARDT (SBN 58586)
**ROPERS, MAJESKI, KOHN & BENTLEY PC**
201 Spear Street, Suite 1000
San Francisco, CA 94105
Telephone:      (415) 543-4800
Facsimile:      (415) 972-6301
Email:          gweickhardt@ropers.com

Of Counsel:
LEANN PEDERSEN POPE (*Admitted Pro Hac Vice*)
ROBERT J. EMANUEL (*Admitted Pro Hac Vice*)
**BURKE, WARREN, MACKAY & SERRITELLA, P.C.**
330 North Wabash, 22nd Floor
Chicago, Illinois 60611
Telephone:      (312) 840-7000
Facsimile:      (312) 840-7900
Email:          lpope@burkelaw.com
                remanuel@burkelaw.com

Attorneys for Defendant
CHASE HOME FINANCE LLC, sued herein as
CHASE HOME FINANCE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| T.C. JEFFERSON, on behalf of himself and all those similarly situated, | CASE NO.  C06-6510 TEH |
| Plaintiffs, | **CLASS ACTION** |
| v. | **CHASE HOME FINANCE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S FEE PETITION** |
| CHASE HOME FINANCE and DOES 1-150, | **Date:**<br>**Time: 10:00 a.m.**<br>**Courtroom: 12, 19th Floor** |
| Defendants. | **Judge Thelton E. Henderson** |

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

493445.8

CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S FEE PETITION

1

## TABLE OF CONTENTS

2

Page

3

4

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

RELEVANT FACTS AND PROCEDURAL HISTORY ...................................................... 3

            A.     Facts Related To Jefferson's Claims ............................................................ 3

            B.     Relevant Procedural History And Jefferson's Evolving Theory Of Liability. ......................................................................................................... 5

ARGUMENT .......................................................................................................................... 7

    I.      THE FEES REQUESTED ARE UNREASONABLE IN LIGHT OF THE SMALL RECOVERY OBTAINED FOR THE SETTLEMENT CLASS ............ 7

    II.     COUNSEL'S HOURLY RATES ARE EXCESSIVE AND JEFFERSON'S FEE PETITION SHOULD BE REDUCED ACCORDINGLY ............................. 9

    III.    THE TIME SPENT BY JEFFERSON'S COUNSEL WAS EXCESSIVE AND ANY FEE AWARD SHOULD BE REDUCED ACCORDINGLY ........... 12

CONCLUSION ..................................................................................................................... 15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

493445.8

i

CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S FEE PETITION

TABLE OF AUTHORITIES

Page

*Acuna v. Regents of The Univ. of California*, 141 F.3d 1173 (9th Cir. 1998). ............................ 12

*Allen v. Bay Area Rapid Transit Dist.*, No. 00-3232, 2003 WL 23333580 (N.D. Cal. July 31, 2003)....................................................................................................................................10

*Camacho v. Bridgeport Financial*, 523 F.3d 973 (9th Cir. 2008) ................................................ .9

*Cancio v. Financial Credit Network*, No. 04-03755, 2005 WL 1629809 (N.D. Cal. July 6, 2005) ......................................................................................................................................10, 11

*Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir.1986)................................................... .8

*Comite De Jornaleros De Redondo Beach v. City of Redondo Beach*, 2006 WL 4081215 (C.D. Cal. 2006)..................................................................................................................................12

*ConsumerInfo.com, Inc. v. Money Management International, Inc.*, No. 07-04275, 2009 WL 52163, *13 (C.D. Cal. Jan. 8, 2009)..................................................................................14

*Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) ........................ .10, 14

*Ferland v. Conrad Credit Corp.*, 244 F.3d 1145 (9th Cir. 1991)........................................12

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) ...................................................... 7

*Hensley v. Eckerhart*, 461 U.S. 424 (1983). ........................................................ 7, 8, 9, 12, 14

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ......................................................... 10, 11

*Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999). ......................................................... 8

*Martinez v. Idaho First Nat'l Bank*, 755 F.2d 1376 (9th Cir. 1985) ............................................ 8, 9

*Navarro v. Eskanos & Adler*, No. 02-03430, 2007 WL 4200171 (N.D. Cal. Nov. 26, 2007)..................................................................................................................................8, 12

*Sial v. Professional Collection Consultants*, No. 07-7868, 2008 WL 2415037 (C.D. Cal. June 12, 2008)....................................................................................................................................12

*Welch v. Metrop. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007) .......................................... ......11, 14

*Yahoo! Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179 (N.D. Cal. 2004)..............................10

*Yeagely v. Wells Fargo & Company*, No. 05-03403, 2008 WL 171083 (N.D. Cal. Jan. 18, 2008)..................................................................................................................................8, 9

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

PRELIMINARY STATEMENT

After two years of pursuing "scorched-earth" litigation, resulting in a recovery of a mere $68,000 for the settlement class, Plaintiff T.C. Jefferson ("Jefferson") now seeks an award of $600,000 in attorneys' fees and costs.[1]  As discussed below, the fees Jefferson seeks, which are grossly disproportionate to the recovery obtained, should be substantially reduced.

First, the award Jefferson seeks is excessive when compared to the small monetary benefit he conferred on the settlement class.  Contrary to his arguments, the Court is not bound by his counsel's lodestar.  Instead, as discussed below, when determining a fee award the Court should consider a number of other factors – including the benefit obtained for the class and the limited degree of success, and reduce counsel's lodestar.  Jefferson overstates the result obtained here by mischaracterizing the injunctive relief under the settlement.  For example, Chase did not agree to modify its "payment processing practices," as Jefferson claims.  Instead, Chase agreed to modify its monthly statements and payment coupons to remind borrowers: (i) to designate how they want any additional funds to be applied; and (ii) that any undesignated funds may be placed in a suspense account.  The payment coupon will be revised to state: "Please designate how you want to apply any additional funds.  When sent with this Coupon, undesignated funds first pay outstanding late charges and fees, then principal.  Undesignated funds sent without this Coupon may be placed in a suspense account (rather than applied directly to your loan) until Chase determines how you want to apply those funds. Once paid, additional funds cannot be returned."

This additional statement is entirely consistent with Chase's position prior to, and during, this litigation: borrowers are contractually required to designate how they want additional payments to be applied.  Thus, contrary to Jefferson's claims, Chase did not agree to change the

---

[1]   According to Jefferson, his counsel has actually incurred fees and costs of at least $852,478.74. (Brief, p. 10).  Under the settlement, Jefferson's counsel agreed to limit any fee request to $600,000.

1

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley

A Professional Corporation

San Francisco

way it *processes* prepayments in response to his lawsuit. In fact, Jefferson abandoned any argument that he was seeking to force Chase to alter its payments processing in response to Chase's preemption arguments.

Second, the fee award should be reduced because the hourly rates sought are excessive when compared to the prevailing rates in this District. Jefferson seeks to recover hourly rates for attorneys of between $325 (for an associate who graduated in 2005) and $625 per hour (for senior partners Scott Emblidge and James Sturdevant).[2]   These rates are far in excess of the prevailing rates in this District and should be reduced. Jefferson has also failed to present *any* evidence to support his counsel's hourly rates in *non-contingency* litigation, which is the standard the Court should follow. Any fee award should be reduced for this reason as well.

Third, the time records submitted show a complete lack of efficiency and coordination between the two law firms that represented Jefferson in this case, as well as gross overstaffing. For example, Jefferson seeks fees for *eight different attorneys* that worked on this matter. Jefferson's records also reflect a host of unnecessary work, including extensive amounts of time (approximately 506 hours) pursuing discovery that *was never utilized in this case*. Jefferson's fee award should be reduced for this reason as well.

Jefferson tries to blame the amount of fees incurred on Chase's "aggressive" tactics and its supposed refusal to disclose the small amount of any damages.[3]  (Brief, p.6.)  In truth, Jefferson

---

[2]   In contrast to the rates Jefferson seeks here, the two attorneys that were primarily responsible for defending Chase in this case charged $382.00 and $292.00 per hour. (Declaration of Robert J. Emanuel, submitted herewith, paras. 2, 3).

[3]   On the contrary, Chase disclosed what it believed to be the very limited amount of any damages at issue here.  Specifically, Chase disclosed the limited amount of any damages at an early neutral evaluation session in April 2007.  (Emanuel Declaration, para. 4).  Moreover, Jefferson was aware of the small amount of damages at issue before he even filed suit. When his loan was re-amortized by Chase in response to his counsel's CLRA demand, he received a credit of approximately four dollars.

493445.8

2

CHASE HOME FINANCE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S FEE PETITION

and his counsel were never certain of exactly what claims they were asserting here and, instead, engaged in an exhaustive fishing expedition directed toward ferreting out other possible claims that might be asserted against Chase.[4] For example, Jefferson's original complaint alleged that Chase had a "common practice" of placing *all* prepayments in suspense accounts. When his counsel learned that Chase did not have such a practice, they turned their attention to the facts regarding Jefferson's own claim and learned that his mid-month prepayments were being placed in suspense because he sent them without the contractually required designation – as he was told before they ever filed this lawsuit. When Chase moved for summary judgment based on preemption and other grounds, Jefferson responded by completely reinventing his claims and arguing, for the first time, that Chase's payment coupons contained a misstatement regarding how any undesignated funds would be applied. None of Jefferson's payments at issue were sent to Chase with a payment coupon. After the Court ruled on summary judgment, Jefferson filed a second amended complaint to incorporate his new "coupon language" theory in January 2008 – just three months before this case was settled. None of the discovery for which Jefferson now seeks fees was relevant to the "coupon language theory" on which this case was finally settled.

### RELEVANT FACTS AND PROCEDURAL HISTORY

A.    Facts Related To Jefferson's Claims.

Jefferson's mortgage allows him to make prepayments of principal under certain circumstances. However, Jefferson is required to advise Chase *in writing* when he is making a prepayment. Specifically, Jefferson's Note provides:

> I have the right to make prepayments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment."

---

[4]    Although discovery was bifurcated at the initial status conference, Jefferson sought extensive discovery that was relevant, if at all, only to the potential claims of absent class members. Jefferson also repeatedly sought discovery regarding the identity of absent (purported) class members, hoping to locate more lucrative claims to assert against Chase.

3

**CHASE HOME FINANCE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S FEE PETITION**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

> *When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.* I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

(Jefferson Note, para. 4, included in Emanuel Declaration Group Exhibit A (emphasis added)).

When Chase began servicing Jefferson's loan in 2003, he made his payments by mailing a check to Chase each month. Additional funds included with his regular monthly payment were applied directly to prepayment of principal. Sometime in 2004, Jefferson started making his regular monthly mortgage payments via the internet. Shortly thereafter, he started making separate mid-month prepayments of principal also via the internet, which is when the dispute between the parties began. Jefferson used a third-party bank's website to make his regular and separate mid-month principal prepayments. These third-party banks' websites did not allow Jefferson to designate his separate mid-month payments as "prepayments," as his mortgage required. Thus, Chase began to receive payments from Jefferson without any designation of whether those funds were to be applied to prepayment of principal or whether the funds were part of his next regular payment.

Because Jefferson's mid-month payments were undesignated, Chase posted the funds to an unapplied funds account, known as a "suspense account." Chase then sent Jefferson a mortgage statement reflecting that his funds were placed in suspense and requesting direction. In response, Jefferson called Chase and was told he needed to provide a written designation when making principal prepayments. On January 24, 2005, Jefferson sent Chase a letter stating:

> The purpose of this communication is to formally request that Chase Bank apply each individual monthly payment of $167.00 to the principal of loan # 1977645290 beginning with the January, 2005 payment.

> Each $167.00 payment will be made in addition to the standard monthly payment and should be applied to the principal of the loan immediately upon receipt.

1   (Letter from Jefferson to Chase dated January 24, 2005, Emanuel Declaration, Exhibit B.) Chase

2   responded on February 4, 2005, advising "We have received your request to apply the amount of

3   $167.00 each month to principal balance of your loan. Your account has been noted." (Letter to

4   Jefferson from Chase dated February 4, 2005, Emanuel Declaration, Exhibit C.)

5

6       In March 2005, Jefferson once again sent undesignated funds to Chase through a third-

7   party bank's website. Chase applied those funds to suspense and sent another letter to Jefferson.

8   After receiving that letter from Chase in March 2005, Jefferson again called Chase. Jefferson

9   was told that the problem with processing separate payments from his bank's website was that

10  the funds were sent to Chase without any direction as to how they should be applied. Chase

11  suggested several other ways that Jefferson could make prepayments so that the funds would be

12  applied directly to principal, such as by mail with a payment coupon, or through Chase's website.

13  Jefferson refused to use any of the other payment methods suggested by Chase.

14

15      On March 14, 2006, Jefferson's counsel sent Chase a letter outlining his purported claims

16  under the CLRA. Chase responded in April 2006, advising that Jefferson should not continue to

17  make his separate prepayments via the internet, as it did not allow him to designate how these

18  payments were to be applied. (*See* Letter from Chase to Jefferson dated April 26, 2006, Emanuel

19  Declaration Exhibit D.) Chase again suggested that any additional payments of principal should

20  be included with Jefferson's regular monthly payment, or sent to Chase by regular mail with the

21  proper designation. *Chase also told Jefferson's counsel that it had re-amortized Jefferson's loan*

22  *using the dates the mid-month internet payments were received by Chase, resulting in an interest*

23  *credit to his account of $3.60.* Jefferson responded by filing this lawsuit.

24

25      B.      Relevant Procedural History And Jefferson's Evolving Theory Of Liability.

26

27      Jefferson filed this lawsuit in the Superior Court for the County of Alameda on August 24,

28  2006. Jefferson's original complaint alleged that Chase had a "common practice" of placing all

5

CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S FEE PETITION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    prepayments in suspense and asserted claims for violations of the California Consumer Legal

2    Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA"), the Deceptive Advertising Statute,

3    Cal. Bus. & Prof. § 17500 *et seq.* (the "FAL"), the Unfair Business Practices Act, Cal. Bus. &

4    Prof. Code § 17200 (the "UCL"), and for conversion, Civil Code § 3336.  Chase timely filed a

5    Notice of Removal in this Court on October 18, 2006, pursuant to 28 U.S.C. §§ 1441 *et seq.* and

6    the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).[5]  Jefferson did not seek remand.

7

8         Jefferson conducted exhaustive and unnecessary discovery in connection with the claims

9    asserted in his original and first amended complaint.  Despite an order bifurcating discovery,

10   Jefferson insisted on pursuing discovery that was relevant, if at all, only to the claims of absent

11   class members.  Jefferson propounded 39 requests to produce, 25 interrogatories (not counting

12   subparts), and 22 requests to admit.  Chase has provided Plaintiff with more than 1000

13   documents. Jefferson also deposed six different Chase employees. *None* of this discovery related

14   to the "coupon language theory" contained in Jefferson's second amended complaint.  Jefferson

15   did not propound a discovery request regarding that theory and not a single question during the

16   six depositions Jefferson conducted related to the coupon language.

17

18        Next, during the course of litigation, Chase repeatedly advised Jefferson that the amount

19   of any damages involved in this case were very small.  For example, in April 2007, the parties

20   participated in an early neutral evaluation conference.  Prior to and during that conference, Chase

21   advised Jefferson's counsel that the damages at issue in this case were very limited and suggested

22   settling the case on an individual basis. (Emanuel Declaration, para. 4).

23

24        [5]   Chase removed this case under CAFA because, taking the allegations of the original
25   complaint as true, it believed the amount in controversy exceeded $5 million.  Specifically,
     Jefferson's original complaint appeared to include *all* prepayments made by California borrowers,
26   rather than the undesignated separate mid-month prepayments made by Jefferson that were
     ultimately at issue and encompassed in the Settlement.  Moreover, Chase's notice of removal
27   expressly denied that any potential liability would exceed $5 million.  (Notice of Removal,
     Emanuel Declaration, Exhibit E, p. 3, n. 1).
28

493445.8                                         6         **CHASE HOME FINANCE LLC'S MEMORANDUM OF**
                                                            **POINTS AND AUTHORITIES IN OPPOSITION TO**
                                                            **PLAINTIFF'S FEE PETITION**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    In September 2007, Chase filed a motion for summary judgment, explaining that it applies

2    properly designated prepayments to principal, and also applies additional funds received with a

3    borrower's regular payment to principal, provided no fees are due.  Chase also argued that it did

4
     not have a "*common practice*" of placing prepayments in suspense, and Jefferson's claims were
5
6    not subject to class treatment.  Apparently recognizing as much, Jefferson completely reinvented

7    his claims in response to Chase's motion, claiming *for the first time* that the payment coupons

8    attached to Chase's monthly statements contained a misrepresentation as to how any undesignated

9    funds would be applied.[6]

10    After ruling on Chase's motion for summary judgment in December 2007, the Court

11    directed Jefferson to file an amended complaint to include his new theory and directed the parties

12    to explore settlement.  Jefferson filed his second amended complaint on January 18, 2008.  On

13
      April 17, 2008, the parties participated in a conference with Magistrate Spero, and the case was
14
15    settled.

16                                    ARGUMENT

17    I.    THE FEES REQUESTED ARE UNREASONABLE IN LIGHT OF THE SMALL
            RECOVERY OBTAINED FOR THE SETTLEMENT CLASS.
18

19    As a general rule, fee awards in the Ninth Circuit are determined by calculating the

20    lodestar (or "touchstone"), which is the number of hours reasonably expended multiplied by a

21    reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Gates v. Deukmejian*,

22    987 F.2d 1392, 1397 (9th Cir. 1992).  The party seeking a fee award bears the burden of

23
      documenting the hours expended and must submit evidence in support of those hours.  *Hensley*,
24
25    461 U.S. at 433-34.  The hours requested may be reduced where documentation is inadequate, if

26

27        [6]  Jefferson made this claim despite the fact that *none* of the payments at issue were made
28    with a payment coupon.

493445.8                                7        CHASE HOME FINANCE LLC'S MEMORANDUM OF
                                                  POINTS AND AUTHORITIES IN OPPOSITION TO
                                                  PLAINTIFF'S FEE PETITION

1   the case was overstaffed, or where the hours expended are excessive or otherwise unnecessary.

2   *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.1986).

3       Courts may also reduce a fee award where it would be disproportionate to the result

4   obtained. *See Hensley*, 461 U.S. at 436 (when calculating fees, "the most critical factor is the

5   result obtained."); *Yeagely v. Wells Fargo & Company*, No. 05-03403, 2008 WL 171083, **8-10

6   (N.D. Cal. Jan. 18, 2008) (reducing attorneys' fees in settlement of FCRA class action based on

7   limited value of relief obtained for class members). Similarly, courts routinely reduce fees where,

8   as here, the plaintiff has met with a limited degree of success. *Lambert v. Ackerley*, 180 F.3d 997,

9   1012-13 (9th Cir. 1999) ("[p]arties are entitled to fees only for work related to issues on which

10  they prevail . . .").

11

12      Although Jefferson recovered only $68,000 for the settlement class (with each class

13  member receiving $5.00), he seeks an award of fees and costs of $600,000.[7]  Any fee award

14  should be reduced to account for Jefferson's limited success, as well as the gross disparity

15  between the amount sought and very small recovery obtained for the settlement class here.

16  *Yeagley, supra,* 2008 WL 171083 at **8-10; *Martinez v. Idaho First Nat'l Bank*, 755 F.2d 1376,

17  1379 (9th Cir. 1985) (reducing attorneys' fee award in light of "negligible" recovery in TILA

18  action). *See also Navarro v. Eskanos & Adler*, No. 02-03430, 2007 WL 4200171, * 11 (N.D. Cal.

---

[7]  Jefferson incorrectly claims he provided the class with significant injunctive relief by forcing Chase to change its payment processing practices. (Brief, p. 8).  Instead, Chase has agreed to change the monthly statements and payments coupons to remind borrowers that undesignated payments (like Jefferson's) may be placed in suspense.  This is consistent with Chase's position throughout this litigation; *borrowers are contractually obligated to designate how they want any additional payments to be applied.*  These reminders cannot be fairly characterized as a change to the way in which Chase "processes" mortgage payments – *because Chase was never processing the payments incorrectly.*  In fact, as the Court may recall, Jefferson abandoned any arguments regarding the way Chase processes mortgage payments in response to Chase's motion for summary judgment by abandoning any claims based on Jefferson's contract.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

493445.8

8

1    Nov. 26, 2007) (refusing to award any fees in an FDCPA case after determining *all* fees and costs

2    incurred were unreasonable).

3        In *Yeagley*, the court declined to follow the lodestar approach and, instead, awarded

4    attorneys' fees based on a percentage of what it determined to be the actual value of the

5

6    settlement. 2008 WL 171083 at *10. Despite the fact that the defendant did not oppose the fee

7    request, the court reduced plaintiff's attorneys' fees from $1.5 million to $326,000. *Id.*

8        Here, Jefferson incorrectly claims the Court may not adjust his counsel's lodestar, even if

9    it finds the hours or rates to be unreasonable. (Brief, p. 11).[8] However, the Supreme Court has

10   recognized that a fee award may be reduced based on a party's limited success, and Jefferson's

11   argument on this point should be rejected. *See Hensley*, 461 U.S. at 434-38 (stating "[i]f ... a

12   plaintiff has achieved only partial or limited success, the product of hours reasonably expended

13

14   on the litigation as a whole times a reasonable hourly rate may be an excessive amount").

15       Jefferson spent two years pursuing claims against Chase and recovered $68,000 for the

16   class here.   He now seeks *more than nine times* that amount in attorneys' fees and costs.

17   Moreover, as discussed above, Jefferson did not obtain significant injunctive relief for the class.

18   Thus, any award should be substantially reduced to reflect Jefferson's very limited success.

19   II.    COUNSEL'S HOURLY RATES ARE EXCESSIVE AND JEFFERSON'S FEE
20          PETITION SHOULD BE REDUCED ACCORDINGLY.

21       Jefferson's fees should also be reduced because he has not presented *any* evidence

22   regarding his counsel's hourly rates in *non-contingency* cases, instead relying solely on rates

23

24

25       [8]  Jefferson's reliance on *Camacho v. Bridgeport Financial* for this point is misplaced.
26   523 F.3d 973 (9th Cir. 2008).  In *Camacho*, the Ninth Circuit recognized a district court has the
     discretion to adjust the lodestar stating, "although in most cases the lodestar figure is a
27   presumptively reasonable fee award, the district court may, if circumstances warrant, adjust the
     lodestar account for other factors which are not subsumed within it.")
28
     493445.8                                    9        **CHASE HOME FINANCE LLC'S MEMORANDUM OF
                                                          POINTS AND AUTHORITIES IN OPPOSITION TO
                                                          PLAINTIFF'S FEE PETITION**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

obtained in other contingency fee litigation.[9]  The Ninth Circuit and other courts have recognized that awards should be premised on the prevailing hourly rate for *private* attorneys handling non-contingent litigation.  *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992) (when calculating lodestar, court should use rates charged *paying clients* for legal work of similar complexity), reversed, in part, on other grounds, 984 F.2d 345 (9th Cir. 1993).  *See also*, *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) (recognizing court should utilize rates charged by counsel in non-contingent litigation).  Jefferson has failed to submit any evidence as to his counsel's rates for paying clients *in non-contingency fee cases*.

Any fee award must also be reduced because the hourly rates Jefferson seeks *greatly* exceed the prevailing rates in this District.  Jefferson seeks an award of fees based on rates ranging from $325 per hour for an associate admitted to practice in 2005, to $575 per hour for senior associates Mark T. Johnson and Robert Sanford, to $625 per hour for senior partners Scott Emblidge and James C. Sturdevant.  (Brief, p. 13).[10]

In contrast to the rates Jefferson seeks, the attorneys that represented Chase in this matter charged between $265 and $382 per hour.  Chase's primary counsel in this case, LeAnn Pedersen Pope and Robert J. Emanuel are both partners at Burke Warren MacKay & Serritella in Chicago and specialize in defending consumer finance class actions.  (Emanuel Declaration, para. 3).  Mr.

---

[9]   The only evidence of hourly rates paid by actual clients in non-contingency cases is the evidence submitted by Chase in support of its opposition.

[10]   Courts in this District have rejected far lower hourly rates as excessive.  *See Yahoo! Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1192 (N.D. Cal. 2004) (rejecting hourly rate of $266 as excessive and concluding $190 was reasonably hourly rate in Bay Area); *Allen v. Bay Area Rapid Transit Dist.*, No. 00-3232, 2003 WL 23333580, *7 (N.D. Cal. July 31, 2003) (approving hourly rate of $150 for the San Francisco Bay Area).  Chase recognizes this Court has declined to follow *Yahoo* in at least one case.  *Cancio v. Financial Credit Network*, No. 04 - 03755, 2005 WL 1629809, *1, n.1 (N.D. Cal. July 6, 2005).  However, in *Nacio* this Court approved hourly rates for two "experienced" attorneys at $345 and $435 – more than two hundred dollars less than Jefferson seeks for the most senior attorneys in this case.  *Id.* at *3.  As discussed above, even *Nacio* does not support a fee award based on the rates Jefferson seeks here.

493445.8

10

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   Emanuel was admitted to the Illinois bar in 1995. (*Id.*) Ms. Pope was admitted to the Illinois bar

2   in 1983 and, in addition to being a partner, she is the chair of her firm's class action defense

3   practice. (*Id.,* para. 4). Mr. Emanuel and Ms. Pope's hourly rates in connection with this case

4
    were $282 and $382, respectively.[11]   (*Id., paras. 2,3.*)   Additional counsel for Chase, George
5
    Wieckhardt, was admitted to the California bar in 1973 and is a partner in the San Francisco firm
6
7   of Ropers, Majeski, Kohn & Bentley. (Weickhardt Declaration, para. 2). Between 2008 and the

8   present, Mr. Weickhardt's hourly rate has been $265.[12]   (*Id.,* para. 3.)

9       Finally, the cases Jefferson cites do not support the hourly rates he seeks here. (Brief, pp.

10  13-14).  For example, in *Cancio v. Fin. Credit Network*, this Court approved hourly rates for two

11  attorneys who had been practicing consumer law for *thirty years* at $345 and $435, respectively.

12
    *See Cancio*, No. 04 -03755, 2005 WL 1629809, *3 (N.D. Cal. July 6, 2005) (Henderson, J.);
13
    *Welch v. Metrop. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (approving hourly rates of $375
14
15  to $400).    In fact, Jefferson does not cite a single case approving hourly rates in excess of $450 –

16  which is the low end of the hourly rates he asks the Court to approve here.[13]   The hourly rates

17  Jefferson seeks should be rejected as excessive and any fee award should be reduced accordingly.

18

19

20  [11]   This represents the average of Mr. Emanuel's and Ms. Pope's respective hourly rates
    for the time period between 2006 and the present. (Emanuel Declaration, paras. 2, 3.)

21  [12]   Chase also submits the declaration of Tomio Narita in support of its opposition to
22  Jefferson's motion. Mr. Narita has been practicing law for 18 years and specializes in consumer
    finance litigation. Mr. Narita practices in San Francisco and his hourly rate is $350.

23  [13]   Jefferson cites *Cherry v. The City College of San Francisco*, case no. 04-4981, to
24  support the hourly rates sought for Sylvia Sokol and Mark T. Johnson. However, neither of the
    orders submitted indicate the hourly rates for Ms. Sokol or Mr. Johnson. (Sturdevant Declaration,
25  Exhibits E and F). Similarly, Scott Emblidge submits orders from *Hall v. Cinema 7 Inc.*, case no.
    02-409105, in support of his rates. However, the (unpublished) orders attached from that matter
26  do not indicate the hourly rate approved by the Court.  (Emblidge Declaration, Exhibit G).
    Instead, the orders submitted indicate that counsel recovered over $1,450,000 for the class in that
27  case and sought an award of $3,959,468.37. The court apparently reduced counsel's fees to
28  $2,200,000. (*Id.*)

1

III.   THE TIME SPENT BY JEFFERSON'S COUNSEL WAS EXCESSIVE AND ANY FEE
2      AWARD SHOULD BE REDUCED ACCORDINGLY.

3          A fee award may be reduced where the case was overstaffed or if the hours expended are

4   deemed excessive or otherwise unnecessary. *Hensley*, 461 U.S. at 434 (initial lodestar calculation

5   should exclude hours that are excessive, redundant or not reasonably necessary); *Sial v.*

6   *Professional Collection Consultants*, No. 07-7868, 2008 WL 2415037, *1 (C.D. Cal., June 12,

7   2008).   When making reductions, the Court does not need to weigh the reasonableness of each

8   time entry.   Instead, the Court may make an "across-the-board" reduction to exclude any

9
    excessive or unnecessary time. *Navarro,* 2007 WL 4200171 at *11 (denying fee petition in its
10

11  entirety), citing *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1150-51 (9th Cir. 1991) (flat

12  percentage of fee reduction permitted).

13         A review of Jefferson's fee petition(s) show that several reductions are required here.

14  First, any fee award should be reduced because the case was overstaffed. *Acuna v. Regents of*

15  *The Univ. of California*, 141 F.3d 1173, *3 (9th Cir. 1998) (reversing fee award, stating the

16
    "proper calculation of the fee award required the court to first reduce the request for overstaffing
17

18  inaccurate records to determine lodestar because the problems pervade the entire fee

19  application"); *Comite De Jornaleros De Redondo Beach v. City of Redondo Beach,* No. 04-9396,

20  2006 WL 4081215, *6-7 (C.D. Cal. 2006) (reducing fees by 10% where court determined that the

21  case was overstaffed (nine attorneys), hours were duplicated and bills were too vague to

22  determine individual contributions).   Although there was nothing particularly complex about this

23
    matter, with discovery limited to merits of Jefferson's individual claim and the propriety of class
24

25  certification, Jefferson seeks fees for *no less than eight attorneys*, as well as a paralegal, that

26  worked on this case during the two years that it was pending.   In contrast, Chase was defended in

27  this case by just three attorneys, one of whom served primarily as local counsel.

28

493445.8                          12          CHASE HOME FINANCE LLC'S MEMORANDUM OF
                                               POINTS AND AUTHORITIES IN OPPOSITION TO
                                               PLAINTIFF'S FEE PETITION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Second, Jefferson seeks to recover fees for duplicative and completely unnecessary tasks performed by his counsel. For example, Jefferson seeks to recover for approximately 506 hours[14] they spent pursuing discovery in this case. However, *none* of that discovery related to the "coupon language theory" included in Jefferson's complaint amended in January 2008, just three months before this case settled. As noted above, the vast majority of discovery that Jefferson conducted was directed at locating other borrowers that might have additional claims against Chase. For example, In May 2007, Chase was *ordered* to gather and produce documents, as well as prepare and produce a computer report, regarding complaints by other Chase customers. Jefferson did not utilize any of these complaints in connection with this case. The time spent seeking this discovery is plainly excessive and should be excluded.[15]

The time claimed by plaintiffs' counsel on drafting the class certification motion and opposing summary judgment is another glaring example of duplication of effort and inefficient staffing. Four attorneys (Mark Johnson, Scott Emblidge, Sylvia Sokol and Robert Stanford) claim substantial hours in drafting both the certification motion and the opposition to summary judgment. The time entries are vaguely described as, *e.g.*, "draft reply brief," with no indication of any division of labor as to subjects or portions of the briefing. (Declaration of G. Scott Emblidge, Exhibit C, pp. 22-24).

---

[14] This number is an estimate based on counsel's review of the fee petitions submitted by the Moscone and Sturdevant firms. Determining the exact number of hours spent in connection with discovery in this case is not possible due to the "block billing" utilized by the Moscone firm.

[15] Moreover, some of the time submitted by counsel was not even incurred in connection with this litigation. For example, Jefferson seeks to recover for 9.7 hours (which translates into $6,062.50) for time spent by Scott Emblidge on January 11, 2007 for preparing for and attending a hearing, and preparing for and conducting "Aubry deposition." (Emblidge Declaration, Exhibit I, p. 7). However, there was no deposition or hearing *in this case* on January 11, 2007, and this time must be excluded.

13

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    Similarly, although counsel for Chase prepared the initial draft, Jefferson's counsel

2    apparently spent *in excess of 50 hours* preparing the settlement agreement in this case.  One of

3    Jefferson's attorneys, Mark T. Johnson, spent a total of approximately 34 hours on this task.

4    (Declaration of James C. Sturdevant, Exhibit C, pp. 52-60).

5

6    Finally, any fee award should be reduced to exclude fees that would be inappropriate for a

7    private attorney to bill a paying client.  *Davis, supra,* 976 F.2d at 1545.  For example, Jefferson

8    seeks to recover for twenty plus hours of time spent by Scott Emblidge for traveling to and from

9    Ohio for depositions.[16]  (Emblidge Declaration, Exhibit I, p. 16).  A private attorney could not bill

10   a regular client for this "travel time" – esp ecially where counsel could have worked while

11   travelling on a plane.  These hours should be excluded as well.  *See Hensley,* 461 U.S. at 434

12   (stating "[h]ours that are not properly billed to one's client are also not properly billed to one's

13   adversary pursuant to statutory authority.")[17]  Finally, reimbursement for all costs such as "in-

14   house copying" and Westlaw charges should be denied.  For example, the Sturdevant firm seeks

15   to recover nearly $5,000 for *in-house* copying, at a rate of .25 per page.  (Sturdevant Declaration,

16   p. 9, para. 28).  "Costs for copying, postage [and] telephone calls and the like are the type of costs

17   normally  reimbursed  through  the  overhead  implicit  in  an  attorney's  hourly  fee."

18   *ConsumerInfo.com, Inc. v. Money Management International, Inc.*, No. 07-04275, 2009 WL

19   52163, * 13 (C.D. Cal. January 8, 2009) (internal quotations omitted) (rejecting award of costs

20   including copying, postage and electronic research because those costs are "properly considered

---

[16]  Specifically, Mr. Emblidge seeks to recover for ten hours spent travelling to Columbus on June 24, 2007 and eleven hours for travelling back to San Francisco on June 26, 2007. (Emblidge Declaration, Exhibit I, p. 16.)

[17]  The time submitted by Moscone, Emblidge and Quadra should also be reduced because the hours are billed in "block format," making it difficult to determine how much time was spent on particular activities.  *Welch*, 480 F.3d at 948 ("It was reasonable for the district to conclude that Welch failed to carry her burden, because block billing makes it more difficult to determine how time was spent on particular activities.")

14

CHASE HOME FINANCE LLC'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S FEE PETITION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   overhead" included in counsel's hourly rates).  Any award of fees and costs should be reduced to

2   reflect these amounts as well.

3                                        CONCLUSION

4        For each of the reasons set forth herein, the Court should reduce any award of fees and

5   costs to $150,000 (more than twice the amount recovered for the Class) in light of the disparity

6   between the amount of fees sought and the negligible recovery to the class members, because the

7   rates sought are excessive, and because the hours expended by counsel were unreasonable,

8   especially in light of the very small amount of money at issue in this case.

9

10  Dated: January 22, 2009            BURKE, WARREN, MACKAY & SERRITELLA, P.C.

11                                     By:_____/s/ Robert J. Emanuel_____

12                                              Robert J. Emanuel
                                                Attorney for Defendant
13                                            CHASE HOME FINANCE LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

493445.8

15    CHASE HOME FINANCE LLC'S MEMORANDUM OF
      POINTS AND AUTHORITIES IN OPPOSITION TO
      PLAINTIFF'S FEE PETITION